## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____

| | |
|---|---|
| MICHAEL VAZQUEZ, MICHAEL MALONE, JONATHAN WHITE, BRIAN NAKEL, JEDEDIAH BLANKS, and SAMEER HAMID, individually and on behalf of all others similarly situated, | **CLASS ACTION** **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| vs. | |
| GENERAL MOTORS LLC, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................................1

II.  JURISDICTION ..................................................................................................3

III. VENUE ...............................................................................................................4

IV.  PARTIES ............................................................................................................4

    A.   Plaintiffs ...................................................................................................4

        1.   Florida Plaintiffs ............................................................................4

            a.   Michael Vazquez .................................................................4

            b.   Michael Malone ...................................................................6

        2.   New Jersey Plaintiff ........................................................................7

            a.   Jonathan White.....................................................................7

        3.   Pennsylvania Plaintiff. ....................................................................9

            a.   Brian Nakel ..........................................................................9

        4.   Texas Plaintiff................................................................................10

            a.   Jedediah Blanks ...................................................................10

        5.   West Virginia Plaintiff...................................................................12

            a.   Sameer Hamid......................................................................12

    B.   Defendant.................................................................................................13

V.   FACTUAL ALLEGATIONS .............................................................................14

    A.   Track Enthusiasts Share a Passion for Racing Their Vehicles on Closed Tracks...........................................................................................14

    B.   Specialized Race Tracks Create Safe Conditions for Track Enthusiasts to Pursue Their Passion.......................................................14

    C.   "Track-Proven" Vehicles Operate Under Extreme Conditions and Must Meet Certain Basic Safety Features to Operate on a Race Track.......................15

        1.   Transmission Systems in "Track-Proven" Vehicles .......................15

        2.   Differentials in "Track-Proven" Vehicles......................................16

010687-11 956296 V1

D.     The Corvette Z06 Was Marketed As If It Could Operate on Race Tracks Because GM Knew This Was Material to Potential Buyers ............................ 16

      1.     The Product Information Materials Promoted Track Use ................................ 16

      2.     The Features on the Z06 Are Those One Would Expect in a Track-Ready Car .............................................................................................. 19

      3.     The Z06 Owner's Manual Contemplates Track Use ...................................... 20

      4.     Press Kits Were Created by GM to Entice Track Enthusiasts to Purchase a Z06 ............................................................................................... 23

      5.     GM Sponsored Track Events to Demonstrate the "Track-Readiness" of the Z06 ................................................................................... 25

E.     The Corvette Z06 Cannot Be Safely Raced on the Track Due to Design and Manufacturing Defects in the Cooling System ....................................... 25

      1.     The Nature of the Defects and Their Safety Consequences ........................... 25

      2.     The Economic Consequences Associated with the Defects ........................... 26

F.     GM Was Aware of the Defects in the 2015-2016 Corvette Z06 While Marketing Them as "Track-Proven" ............................................................... 27

      1.     GM Concealed the Fact That the Z06 Was Not Fit for the Track ........................................................................................................... 27

      2.     GM Admits That the Z06's Cooling System Was Defective ......................... 28

      3.     GM Had Knowledge of the Defect from Consumer Complaints ................... 28

G.     Despite Express Warranties, GM Has Not Fixed the Problems with the "Track-Proven" Powertrain System ............................................................... 33

VI.     CLASS ALLEGATIONS ...................................................................... 35

VII.     CLAIMS FOR RELIEF ........................................................................ 43

COUNT ONE VIOLATION OF MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301 *ET SEQ.*) ............................................................................. 43

COUNT TWO VIOLATION OF THE FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201 *ET SEQ.*) ........................... 46

COUNT THREE FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW) ....................................................................................................... 48

COUNT FOUR BREACH OF EXPRESS WARRANTY (FLA. STAT. § 672.313) ........................ 52

COUNT FIVE UNJUST ENRICHMENT (BASED ON FLORIDA LAW) ...................................... 55

COUNT SIX VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. STAT. ANN. § 56:8-1 *ET SEQ.*) .................................................................56

COUNT SEVEN FRAUD BY CONCEALMENT (BASED ON NEW JERSEY LAW) .........................................................................................................................58

COUNT EIGHT BREACH OF EXPRESS WARRANTY (N.J. STAT. ANN. § 12A:2-313).......................................................................................................61

COUNT NINE UNJUST ENRICHMENT (BASED ON NEW JERSEY LAW) ..............................64

COUNT TEN VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES  AND CONSUMER PROTECTION LAW (73 P.S. § 201-1 *ET SEQ.*).....................................................................................................................65

COUNT ELEVEN FRAUDULENT CONCEALMENT (BASED ON PENNSYLVANIA LAW) ........................................................................................68

COUNT TWELVE BREACH OF EXPRESS WARRANTY (13 PA. CONS. STAT. ANN. § 2313).....................................................................................................71

COUNT THIRTEEN UNJUST ENRICHMENT (BASED ON PENNSYLVANIA LAW) ........................................................................................................................74

COUNT FOURTEEN VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT (TEX. BUS. & COM. CODE § 17.4 ET SEQ.)............................................................................................75

COUNT FIFTEEN FRAUD BY CONCEALMENT (BASED ON TEXAS LAW).........................76

COUNT SIXTEEN BREACH OF EXPRESS WARRANTY (TEX. BUS & COM. CODE ANN. §2-313) ..............................................................................................79

COUNT SEVENTEEN UNJUST ENRICHMENT (BASED ON TEXAS LAW) ...........................82

COUNT EIGHTEEN VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT  AND PROTECTION ACT (W. VA. CODE § 46A-1-101 *ET SEQ.*).....................83

COUNT NINETEEN FRAUDULENT CONCEALMENT (BASED ON WEST VIRGINIA LAW)....................................................................................................84

COUNT TWENTY BREACH OF EXPRESS WARRANTY (W. VA. CODE § 46-2-313) .................................................................................................................88

COUNT TWENTY-ONE UNJUST ENRICHMENT (BASED ON WEST VIRGINIA LAW) ........................................................................................................................91

VIII.    FRAUDULENT CONCEALMENT CLAIMS .......................................................92

COUNT TWENTY-TWO FRAUD BY CONCEALMENT FOR REMAINING STATES......................................................................................................................92

IX.    STATUTORY CLAIMS...........................................................................................96

- iii -

COUNT TWENTY-THREE VIOLATION OF THE ALABAMA DECEPTIVE
TRADE PRACTICES ACT (ALA. CODE § 8-19-1 *ET SEQ.*) ..............................................98

COUNT TWENTY-FOUR VIOLATION OF THE ALASKA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT.
ANN. § 45.50.471 *ET SEQ.*) ...................................................................................................99

COUNT TWENTY-FIVE VIOLATION OF THE ARIZONA CONSUMER FRAUD
ACT (ARIZ. REV. STAT. § 44-1521 *ET SEQ.*) ....................................................................100

COUNT TWENTY-SIX VIOLATION OF THE ARKANSAS DECEPTIVE TRADE
PRACTICES ACT (ARK. CODE ANN. § 4-88-101 *ET SEQ.*)............................................101

COUNT TWENTY-SEVEN VIOLATION OF CALIFORNIA UNFAIR
COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)...........................102

COUNT TWENTY-EIGHT VIOLATION OF CALIFORNIA FALSE
ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*) ...........................104

COUNT TWENTY-NINE VIOLATION OF CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*) .......................................................105

COUNT THIRTY VIOLATION OF THE COLORADO CONSUMER
PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *ET SEQ.*) ........................................107

COUNT THIRTY-ONE VIOLATION OF THE CONNECTICUT UNFAIR TRADE
PRACTICES ACT (CONN. GEN. STAT. § 42-110A *ET SEQ.*)...........................................108

COUNT THIRTY-TWO VIOLATION OF THE DELAWARE CONSUMER
FRAUD ACT (DEL. CODE TIT. 6, § 2513 *ET SEQ.*) .........................................................109

COUNT THIRTY-THREE VIOLATION OF THE GEORGIA FAIR BUSINESS
PRACTICES ACT (GA. CODE ANN. § 10-1-390 *ET SEQ.*) ...............................................110

COUNT THIRTY-FOUR VIOLATION OF THE GEORGIA UNIFORM
DECEPTIVE TRADE PRACTICES ACT (GA. CODE. ANN. § 10-1-370 *ET
SEQ.*)........................................................................................................................................111

COUNT THIRTY-FIVE VIOLATION OF THE HAWAII ACT § 480-2(A) (HAW.
REV. STAT. § 480 *ET SEQ.*) ...............................................................................................112

COUNT THIRTY-SIX VIOLATION OF THE IDAHO CONSUMER
PROTECTION ACT (IDAHO CODE ANN. § 48-601 *ET SEQ.*) ........................................113

COUNT THIRTY-SEVEN VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *ET
SEQ.* AND 720 ILCS 295/1A).................................................................................................114

COUNT THIRTY-EIGHT VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3) .......................................................115

COUNT THIRTY-NINE VIOLATION OF THE IOWA PRIVATE RIGHT OF
ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1 *ET
SEQ.*)........................................................................................................................................116

COUNT FORTY VIOLATION OF THE KANSAS CONSUMER PROTECTION
    ACT (KAN. STAT. ANN. § 50-623 *ET SEQ.*) ......................................................................117

COUNT FORTY-ONE VIOLATION OF THE KENTUCKY CONSUMER
    PROTECTION ACT (KY. REV. STAT. ANN. § 367.110 *ET SEQ.*)...................................118

COUNT FORTY-TWO VIOLATION OF THE LOUISIANA UNFAIR TRADE
    PRACTICES  AND CONSUMER PROTECTION LAW (LA. REV. STAT.
    ANN. § 51:1401 *ET SEQ.*) ...................................................................................................119

COUNT FORTY-THREE VIOLATION OF THE MAINE UNFAIR TRADE
    PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*) ............................120

COUNT FORTY-FOUR VIOLATION OF THE MARYLAND CONSUMER
    PROTECTION ACT (MD. CODE, COM. LAW § 13-101 *ET SEQ.*)...................................121

COUNT FORTY-FIVE VIOLATION OF THE MASSACHUSETTS GENERAL
    LAW CHAPTER 93(A) (MASS. GEN. LAWS CH. 93A, § 1 *ET SEQ.*) .............................121

COUNT FORTY-SIX VIOLATION OF THE MICHIGAN CONSUMER
    PROTECTION ACT (MICH. COMP. LAWS § 445.903 *ET SEQ.*).....................................122

COUNT FORTY-SEVEN VIOLATION OF THE MINNESOTA PREVENTION OF
    CONSUMER FRAUD ACT (MINN. STAT. § 325F.68 *ET SEQ.*) .......................................124

COUNT FORTY-EIGHT VIOLATION OF THE MINNESOTA DECEPTIVE
    TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48 *ET SEQ.*) .................................125

COUNT FORTY-NINE VIOLATION OF THE MISSISSIPPI CONSUMER
    PROTECTION ACT (MISS. CODE. ANN. § 75-24-1 *ET SEQ.*) .........................................125

COUNT FIFTY VIOLATION OF THE MISSOURI MERCHANDISING
    PRACTICES ACT (MO. REV. STAT. § 407.010 *ET SEQ.*)................................................126

COUNT FIFTY-ONE VIOLATION OF THE MONTANA UNFAIR TRADE
    PRACTICES  AND CONSUMER PROTECTION ACT OF 1973 (MONT.
    CODE ANN. § 30-14-101 *ET SEQ.*).....................................................................................127

COUNT FIFTY-TWO VIOLATION OF THE NEBRASKA CONSUMER
    PROTECTION ACT (NEB. REV. STAT. § 59-1601 *ET SEQ.*)...........................................128

COUNT FIFTY-THREE VIOLATION OF THE NEVADA DECEPTIVE TRADE
    PRACTICES ACT (NEV. REV. STAT. § 598.0903 *ET SEQ.*) .............................................129

COUNT FIFTY-FOUR VIOLATION OF THE NEW HAMPSHIRE CONSUMER
    PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1 *ET SEQ.*) .................................130

COUNT FIFTY-FIVE VIOLATION OF THE NEW MEXICO UNFAIR TRADE
    PRACTICES ACT (N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)................................................131

COUNT FIFTY-SIX VIOLATION OF THE NEW YORK GENERAL BUSINESS
    LAW §§ 349-350 (N.Y. GEN. BUS. LAW §§ 349-350) .......................................................132

010687-11 956296

COUNT FIFTY-SEVEN VIOLATION OF THE NORTH CAROLINA UNFAIR
      AND DECEPTIVE ACTS  AND PRACTICES ACT (N.C. GEN. STAT.
      § 75-1.1 *ET SEQ.*) ...............................................................................................133

COUNT FIFTY-EIGHT VIOLATION OF THE NORTH DAKOTA CONSUMER
      FRAUD ACT (N.D. CENT. CODE § 51-15-02) ...................................................133

COUNT FIFTY-NINE VIOLATION OF THE OHIO CONSUMER SALES
      PRACTICES ACT (OHIO REV. CODE ANN. § 1345.01 *ET SEQ.*) ...................................134

COUNT SIXTY VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION
      ACT (OKLA. STAT. TIT. 15, § 751 *ET SEQ.*) .......................................................135

COUNT SIXTY-ONE VIOLATION OF THE OREGON UNLAWFUL TRADE
      PRACTICES ACT (OR. REV. STAT. § 646.605 *ET SEQ.*) ...................................137

COUNT SIXTY-TWO VIOLATION OF THE RHODE ISLAND UNFAIR TRADE
      PRACTICES  AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS
      § 6-13.1 *ET SEQ.*) ...............................................................................................138

COUNT SIXTY-THREE VIOLATION OF THE SOUTH CAROLINA UNFAIR
      TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10 *ET SEQ.*) ...................................139

COUNT SIXTY-FOUR VIOLATION OF THE SOUTH DAKOTA DECEPTIVE
      TRADE PRACTICES  AND CONSUMER PROTECTION LAW (S.D.
      CODIFIED LAWS § 37-24-6) .................................................................................140

COUNT SIXTY-FIVE VIOLATION OF THE TENNESSEE CONSUMER
      PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET SEQ.*) ...................................141

COUNT SIXTY-SIX VIOLATION OF THE UTAH CONSUMER SALE
      PRACTICES ACT (UTAH CODE ANN. § 13-11-1 *ET SEQ.*) ...................................141

COUNT SIXTY-SEVEN VIOLATION OF THE VERMONT CONSUMER FRAUD
      ACT (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*) ...................................142

COUNT SIXTY-EIGHT VIOLATION OF THE VIRGINIA CONSUMER
      PROTECTION ACT (VA. CODE ANN. § 59.1-196 *ET SEQ.*) ...........................................143

COUNT SIXTY-NINE VIOLATION OF THE WASHINGTON CONSUMER
      PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*)..........................144

COUNT SEVENTY VIOLATION OF THE WISCONSIN DECEPTIVE TRADE
      PRACTICES ACT (WIS. STAT. § 110.18) .........................................................145

COUNT SEVENTY-ONE VIOLATION OF THE WYOMING CONSUMER
      PROTECTION ACT (WYO. STAT. § 40-12-105 *ET SEQ.*) .................................146

X.      UNJUST ENRICHMENT CLAIMS ...................................................................146

COUNT SEVENTY-TWO UNJUST ENRICHMENT (BASED ON ALABAMA
      LAW) ...........................................................................................................146

COUNT SEVENTY-THREE UNJUST ENRICHMENT (BASED ON ALASKA LAW) ........................................................................................................................147

COUNT SEVENTY-FOUR UNJUST ENRICHMENT (BASED ON ARIZONA LAW) ........................................................................................................................148

COUNT SEVENTY-FIVE UNJUST ENRICHMENT (BASED ON ARKANSAS LAW) ........................................................................................................................149

COUNT SEVENTY-SIX UNJUST ENRICHMENT (BASED ON CALIFORNIA LAW) ........................................................................................................................149

COUNT SEVENTY-SEVEN UNJUST ENRICHMENT (BASED ON COLORADO LAW) ........................................................................................................................150

COUNT SEVENTY-EIGHT UNJUST ENRICHMENT (BASED ON CONNECTICUT LAW)........................................................................................................151

COUNT SEVENTY-NINE UNJUST ENRICHMENT (BASED ON DELAWARE LAW) ........................................................................................................................152

COUNT EIGHTY UNJUST ENRICHMENT (BASED ON GEORGIA LAW) ..............................152

COUNT EIGHTY-ONE UNJUST ENRICHMENT (BASED ON HAWAII LAW) ......................153

COUNT EIGHTY-TWO UNJUST ENRICHMENT (BASED ON IDAHO LAW)........................154

COUNT EIGHTY-THREE UNJUST ENRICHMENT (BASED ON ILLINOIS LAW) ........................................................................................................................155

COUNT EIGHTY-FOUR UNJUST ENRICHMENT (BASED ON INDIANA LAW) ..................155

COUNT EIGHTY-FIVE UNJUST ENRICHMENT (BASED ON IOWA LAW) ..........................156

COUNT EIGHTY-SIX UNJUST ENRICHMENT (BASED ON KANSAS LAW) .......................157

COUNT EIGHTY-SEVEN UNJUST ENRICHMENT (BASED ON KENTUCKY LAW) ........................................................................................................................158

COUNT EIGHTY-EIGHT UNJUST ENRICHMENT (BASED ON LOUISIANA LAW) ........................................................................................................................158

COUNT EIGHTY-NINE UNJUST ENRICHMENT (BASED ON MAINE LAW) .......................159

COUNT NINETY UNJUST ENRICHMENT (BASED ON MARYLAND LAW) ........................160

COUNT NINETY-ONE UNJUST ENRICHMENT (BASED ON MASSACHUSETTS LAW) ...............................................................................................161

COUNT NINETY-TWO UNJUST ENRICHMENT (BASED ON MICHIGAN LAW) ........................................................................................................................161

COUNT NINETY-THREE UNJUST ENRICHMENT (BASED ON MINNESOTA LAW) ........................................................................................................................162

010687-11 956296

COUNT NINETY-FOUR UNJUST ENRICHMENT (BASED ON MISSISSIPPI LAW) ...................................................................................................................163

COUNT NINETY-FIVE UNJUST ENRICHMENT (BASED ON MISSOURI LAW) ...................164

COUNT NINETY-SIX UNJUST ENRICHMENT (BASED ON MONTANA LAW) ....................164

COUNT NINETY-SEVEN UNJUST ENRICHMENT (BASED ON NEBRASKA LAW) ...................................................................................................................165

COUNT NINETY-EIGHT UNJUST ENRICHMENT (BASED ON NEVADA LAW) .................166

COUNT NINETY-NINE UNJUST ENRICHMENT (BASED ON NEW HAMPSHIRE LAW) .............................................................................................167

COUNT ONE HUNDRED UNJUST ENRICHMENT (BASED ON NEW MEXICO LAW) ...................................................................................................................167

COUNT ONE HUNDRED ONE UNJUST ENRICHMENT (BASED ON NEW YORK LAW) ...................................................................................................................168

COUNT ONE HUNDRED TWO UNJUST ENRICHMENT (BASED ON NORTH CAROLINA LAW) ...........................................................................................169

COUNT ONE HUNDRED THREE UNJUST ENRICHMENT (BASED ON NORTH DAKOTA LAW) .................................................................................................170

COUNT ONE HUNDRED FOUR UNJUST ENRICHMENT (BASED ON OHIO LAW) ...................................................................................................................170

COUNT ONE HUNDRED FIVE UNJUST ENRICHMENT (BASED ON OKLAHOMA LAW) ...............................................................................................171

COUNT ONE HUNDRED SIX UNJUST ENRICHMENT (BASED ON OREGON LAW) ...................................................................................................................172

COUNT ONE HUNDRED SEVEN UNJUST ENRICHMENT (BASED ON RHODE ISLAND LAW) ...................................................................................................173

COUNT ONE HUNDRED EIGHT UNJUST ENRICHMENT (BASED ON SOUTH CAROLINA LAW) ...........................................................................................173

COUNT ONE HUNDRED NINE UNJUST ENRICHMENT (BASED ON SOUTH DAKOTA LAW) .................................................................................................174

COUNT ONE HUNDRED TEN UNJUST ENRICHMENT (BASED ON TENNESSEE LAW) ...............................................................................................175

COUNT ONE HUNDRED ELEVEN UNJUST ENRICHMENT (BASED ON UTAH LAW) ...................................................................................................................176

COUNT ONE HUNDRED TWELVE UNJUST ENRICHMENT (BASED ON VERMONT LAW) ...............................................................................................176

COUNT ONE HUNDRED THIRTEEN UNJUST ENRICHMENT (BASED ON
    VIRGINIA LAW) ................................................................................................. 177

COUNT ONE HUNDRED FOURTEEN UNJUST ENRICHMENT (BASED ON
    WASHINGTON LAW) .......................................................................................... 178

COUNT ONE HUNDRED FIFTEEN UNJUST ENRICHMENT (BASED ON
    WISCONSIN LAW) .............................................................................................. 179

COUNT ONE HUNDRED SIXTEEN UNJUST ENRICHMENT (BASED ON
    WYOMING LAW) ................................................................................................ 179

XI.     EXPRESS WARRANTY CLAIMS ..................................................................... 180

COUNT ONE HUNDRED SEVENTEEN VIOLATION OF SONG-BEVERLY
    CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS
    WARRANTIES (CAL. CIV. CODE §§ 1791.2 & 1793.2(D)) ............................. 180

REQUEST FOR RELIEF ............................................................................................... 182

DEMAND FOR JURY TRIAL ....................................................................................... 183

010687-11 956296

Plaintiffs Michael Vazquez, Michael Malone, Jonathan White, Brian Nakel, Jedediah Blanks, and Sameer Hamid (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), allege the following:

## I.    INTRODUCTION

1.    "**Track-Proven Structure and Technologies**." That is what General Motors told potential race-enthusiast customers to entice them to buy its 2015, 2016, and 2017 Corvette Z06. The Z06s were far from ready for the track, however; in fact, they proved to be unreliable there. When a Z06 driver takes their car to the track, he or she learns that after fifteen minutes or less, the Z06 overheats, often causing the car to go into "Limp Mode" at drastically reduced speed and power—an obviously dangerous event when surrounded by speeding cars. The Z06 overheats and goes into Limp Mode because, despite its claims that the Z06 is made for the track, GM chose to equip the Z06 with a defective cooling system. This defect manifests in the "track" car's inability to withstand the demands of race track driving.

2.    There are certain basic rules that all carmakers must follow. When a carmaker sells a car, it has a duty to ensure that the car functions properly and safely for its advertised use and is free from defects. When a carmaker discovers a defect, it must disclose the defect and make it right or cease selling the car. And when a carmaker provides a warranty, it must stand by that warranty. This case arises from GM's breach of these rules. GM deceived its customers when it sold or leased the Z06s while promising that they were built for the track, when in fact they were unreliable and unsafe for that purpose.

3.    GM proclaimed that the Z06 had "track-proven structure and technologies" and explained how the Z06 was "conceived on the track":



4.     As GM intended, Plaintiffs purchased Z06s for road and track use at prices from $80,000 to $120,000. There are over 30,000 vehicles in the proposed Class. However, Z06s are not fit for track use due to an ineffective cooling system. This defect results in the powertrain overheating when used on the track, sometimes sending the car into Limp Mode, which is a dangerous condition on a race track full of speeding cars. In addition to manifesting on the race track, the defect also activates the dangerous Limp Mode or overheats in non-track driving conditions.

5.     Customer experiences with the Z06 on the track differ dramatically from GM's promise of a track vehicle and their testimonials chronicle the activation of Limp Mode or the driver having to pull off the track to let the engine cool down. Z06 forums and GM customer service files are replete with complaints from consumers who reasonably believed that their Z06 would in fact be fully track-capable—instead, they have been put at risk of accident on race tracks and during non-track driving when the defective transmissions and rear differentials

- 2 -

overheat, causing the cars to go into Limp Mode at drastically reduced speed and performance or forcing the driver to stop in order to protect the engine.

6.      In addition, because the Z06 runs at such high temperatures, and particularly when it overheats, the engine is damaged due to warping from these high temperatures.

7.      GM is aware of the defect and suspended production of the Z06 for a period of time to find a solution to the overheating issue, which it intended to incorporate in the 2017 Z06. GM claimed to have fixed the problem in the 2017 model by switching to a new hood with larger vents and a new supercharger cover. However, this fix does not help consumers with previous models and does not fix the problem. The 2017 still overheats and GM's only answer is to, after the fact, warn owners that automatic transmissions have the potential for overheating.

8.      But GM cannot shift its warranty obligations onto its customers. If the Z06s need a different cooling system to actually perform as advertised, then GM should retrofit the cars with these components on its 2015 and 2016 models as well as fix the 2017 model to allow the car to perform as promised. Additionally, GM should address and remedy the problems to the engine, transmission, drivetrain, and other parts that occur as a result of these unintended overheating issues.

9.      Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of the 2015-2017 Corvette Z06s. Plaintiffs seek damages and other equitable relief.

## II.      JURISDICTION

10.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceed $5,000,000, exclusive of costs and interest; and minimal diversity exists.

This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### III.   VENUE

11.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions and/or misrepresentations giving rise to Plaintiffs' claims occurred in this District. Plaintiff Michael Vazquez took delivery of his Z06 in this District and GM has marketed, advertised, sold, and leased Z06s within this District.

### IV.   PARTIES

**A.   Plaintiffs**

**1.   Florida Plaintiffs**

**a.   Michael Vazquez**

12.     Plaintiff Michael Vazquez is an individual residing in Key Biscayne, Florida. On December 31, 2016, Mr. Vazquez purchased a new 2017 Chevrolet Corvette Z06 for $86,362.50 from Bomnin Chevrolet, an authorized GM dealer in Miami, Florida. The vehicle is covered by a manufacturer's warranty. Mr. Vazquez purchased the vehicle for both road and track use.

13.     Mr. Vazquez purchased and still owns this vehicle. Unknown to Mr. Vazquez at the time he purchased the vehicle, the 2017 Corvette Z06 suffered from defects, which has caused him out-of-pocket loss associated with the cooling defect, attempted and future attempted repairs, and diminished value of the vehicle. GM knew about these defects but did not disclose the defects to Mr. Vazquez, so he purchased his vehicle on the reasonable but mistaken belief that his vehicle would be safe and reliable and that the vehicle was intended to be a vehicle that could be used on the track or at high speeds and was capable of safely performing these operations.

- 4 -

14.     Mr. Vazquez selected and ultimately purchased his vehicle, in part, because the Corvette Z06 was represented to be "track-proven" and "the most capable track-Corvette" ever produced. Mr. Vazquez was also told by the sales representatives at Bomnin Chevrolet and through various media outlets that Chevrolet had fixed the overheating issue that plagued the 2015 and 2016 Corvette Z06 models. Mr. Vazquez reviewed print and online advertisements showing photographs of the Corvette Z06 on race tracks and read about how various components in all 2017 Corvette Z06s were "track-proven," such as the suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. None of the information reviewed by Mr. Vazquez contained any disclosure relating to any defects in the Corvette Z06 or that the Corvette Z06 was unreliable and unsafe when used on the track.

15.     Mr. Vazquez's vehicle was equipped with items a reasonable consumer would believe to be present in a vehicle to be used on a track, including special suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. If GM had disclosed to Mr. Vazquez that his vehicle's cooling system suffered from defects that would prevent the full use of his vehicle and pose safety risks, then he would not have purchased the vehicle or he would have paid less for it.

16.     Mr. Vazquez planned to use his 2017 Corvette Z06 on the road and on the track. On April 22 and 23, 2017, Mr. Vazquez used his Corvette Z06 at Sebring international raceway. The car overheated and went into Limp Mode on April 22, 2017, after approximately three laps. The following day, on April 23, 2017, after approximately three or four laps, the car's oil temperature reached 290 and Mr. Vazquez was forced to pit his car and end his day at the track. On or about May 20, 2017, Mr. Vazquez took his corvette to Homestead raceway. After a few

- 5 -

laps, his car overheated and went into Limp Mode, ending his driving for the day. Due to GM's failure to disclose the cooling defect, Mr. Vazquez was denied the benefit of the bargain at the time of sale and paid a premium for a vehicle that he otherwise would have not have. Mr. Vazquez has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

### b.    Michael Malone

17.    Plaintiff Michael Malone is an individual residing in Plantation, Florida. In late March or early April of 2016, Mr. Malone purchased a 2016 Corvette Z06 with the Z07 aero package for $98,000 from Schumacher Chevy, an authorized GM dealer in West Palm Beach, Florida. The vehicle is covered by a manufacturer's warranty. Mr. Malone purchased the vehicle for both road and track use.

18.    Mr. Malone purchased and still owns this vehicle. Unknown to Mr. Malone at the time he purchased the vehicle, the Corvette Z06 suffered from defects, which has caused him out-of-pocket loss associated with the cooling defect, attempted and future attempted repairs, and diminished value of the vehicle. GM knew about these defects but did not disclose the defects to Mr. Malone, so he purchased his vehicle on the reasonable but mistaken belief that his vehicle would be safe and reliable and that the vehicle was intended to be a vehicle that could be used on the track or at high speeds and was capable of safely performing these operations.

19.    Mr. Malone selected and ultimately purchased his vehicle, in part, because the Corvette Z06 was represented to be a track car and was marketed as GM's iconic race car within the family. During his Corvette Z06 research, Mr. Malone reviewed print and online advertisements showing photographs of the Corvette Z06 on race tracks and read about how various components in all Corvette Z06s were "track-proven," such as the suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up

- 6 -

tachometer display used for racing. None of the information reviewed by Mr. Malone contained any disclosure relating to any defects in the Corvette Z06 or that the Corvette Z06 was unreliable and unsafe when used on the track.

20.    Mr. Malone's vehicle was equipped with items a reasonable consumer would believe to be present in a vehicle to be used on a track, including special suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. If GM had disclosed to Mr. Malone that his vehicle's cooling system suffered from defects that would prevent the full use of his vehicle and pose safety risks, then he would not have purchased the vehicle or he would have paid less for it.

21.    In April 2016, Mr. Malone went to Sebring for his first track day with the vehicle and it overheated and went into Limp Mode. He brought the car in for service at Sawgrass Chevy and was told that he had blown a water pump. On Memorial Day, 2016, Mr. Malone took the vehicle to Sebring for a track day and, again, the vehicle overheated and went into Limp Mode. Since April 2016, the vehicle overheated every time Mr. Malone took it to the track, which was 6 to 10 times.

22.    Due to GM's failure to disclose the cooling defect, Mr. Malone was denied the benefit of the bargain at the time of sale and paid a premium for a vehicle that he otherwise would have not have. Mr. Malone has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

### 2.    New Jersey Plaintiff

#### a.    Jonathan White

23.    Plaintiff Jonathan White is an individual residing in Hackettstown, New Jersey. In August 2016, Mr. White purchased a used 2015 Chevrolet Corvette Z06 at Auto Showcase of Carol Stream, a luxury vehicle dealership in Carol Stream, Illinois. Mr. White purchased the

vehicle over the telephone and had it delivered to New Jersey. The vehicle is covered by a manufacturer's warranty. Mr. White purchased the vehicle for both road and track use.

24.     Mr. White purchased and still owns this vehicle. Unknown to Mr. White at the time he purchased the vehicle, the Corvette Z06 suffered from defects, which has caused him out-of-pocket loss associated with the cooling defect, attempted and future attempted repairs, and diminished value of the vehicle. GM knew about these defects but did not disclose the defects to Mr. White, so he purchased his vehicle on the reasonable but mistaken belief that his vehicle would be safe and reliable and that the vehicle was intended to be a vehicle that could be used on the track or at high speeds and was capable of safely performing these operations.

25.     Mr. White selected and ultimately purchased his vehicle, in part, because the Corvette Z06 was represented to be "track-proven" and "the most capable track-Corvette" ever produced. Mr. White reviewed print and online advertisements showing photographs of the Corvette Z06 on race tracks and read about how various components in all 2016 Corvette Z06s were "track-proven," such as the suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. None of the information reviewed by Mr. White contained any disclosure relating to any defects in the Corvette Z06 or that the Corvette Z06 was unreliable and unsafe when used on the track.

26.     Mr. White's vehicle was equipped with items a reasonable consumer would believe to be present in a vehicle to be used on a track, including special suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. If GM had disclosed to Mr. White that his vehicle transmission suffered from defects that would prevent the full use of his vehicle and pose safety risks, then he would not have purchased the vehicle or he would have paid less for it.

- 8 -

27.     Mr. White planned to use his 2015 Corvette Z06 on the road and on the track but stopped taking it to the track after his vehicle overheated went into Limp Mode on the track during his first visit to the track. Due to GM's failure to disclose the cooling defect, Mr. White was denied the benefit of the bargain at the time of sale and paid a premium for a vehicle that he otherwise would have not have. Mr. White has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

### 3.     Pennsylvania Plaintiff.

#### a.     Brian Nakel

28.     Plaintiff Brian Nakel is an individual residing in Mars, Pennsylvania. On April 20, 2016, Mr. Nakel purchased a 2016 Chevrolet Corvette Z06 2LT for $80,000 from Classic Chevrolet, an authorized GM dealer in Pittsburgh, Pennsylvania. The vehicle is covered by a manufacturer's warranty.

29.     Mr. Nakel purchased and still owns this vehicle. Unknown to Mr. Nakel at the time he purchased the vehicle, the Corvette Z06 suffered from defects, which has caused him out-of-pocket loss associated with the cooling defect, attempted and future attempted repairs, and diminished value of the vehicle. GM knew about these defects but did not disclose the defects to Mr. Nakel, so he purchased his vehicle on the reasonable but mistaken belief that his vehicle would be safe and reliable and that the vehicle was intended to be a vehicle that could be used on the track or at high speeds and was capable of safely performing these operations.

30.     Mr. Nakel selected and ultimately purchased his vehicle, in part, because the Corvette Z06 was represented to be "track-proven" and "the most capable track-Corvette" ever produced. Mr. Nakel reviewed print and online advertisements showing photographs of the 2016 Corvette Z06 on race tracks and read about how various components in all 2016 Corvette Z06s were "track-proven," such as the suspension, special steering, special brakes, and specific

- 9 -

software settings, including a "Track App" and a heads-up tachometer display used for racing. None of the information reviewed by Mr. Nakel contained any disclosure relating to any defects in the 2016 Corvette Z06 or that the 2016 Corvette Z06 was unreliable and unsafe when used on the track.

31.     Mr. Nakel's vehicle was equipped with items a reasonable consumer would believe to be present in a vehicle to be used on a track, including special suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. If GM had disclosed to Mr. Nakel that his vehicle's cooling system suffered from defects that would prevent the full use of his vehicle and pose safety risks, then he would not have purchased the vehicle or he would have paid less for it.

32.     Mr. Nakel has already noticed that his vehicle heats up very quickly and is concerned that the vehicle will overheat and go into Limp Mode if he drives it fast. He finds that he is constantly watching the temperature when he is driving, so he is not able to drive the vehicle the way he wants to. Mr. Nakel is also concerned that the car will heat up even faster in the summer in Pittsburgh and he will not be able to drive it at all this summer. Due to GM's failure to disclose the cooling defect, Mr. Nakel was denied the benefit of the bargain at the time of sale and paid a premium for a vehicle that he otherwise would have not have. Mr. Nakel has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

#### 4.     Texas Plaintiff

##### a.     Jedediah Blanks

33.     Plaintiff Jedediah Blanks is an individual residing in Santa Fe, Texas. On October 31, 2016, Mr. Blanks purchased a 2016 Chevrolet Corvette Z06 3LZ for $82,276.60 from Leo

Martin Chevrolet, an authorized GM dealer in Lake Jackson, Texas. The vehicle is covered by a manufacturer's warranty. Mr. Blanks purchased the vehicle for both road and track use.

34.     Mr. Blanks purchased and still owns this vehicle. Unknown to Mr. Blanks at the time he purchased the vehicle, the Corvette Z06 suffered from defects, which has caused him out-of-pocket loss associated with the cooling defect, attempted and future attempted repairs, and diminished value of the vehicle. GM knew about these defects but did not disclose the defects to Mr. Blanks, so he purchased his vehicle on the reasonable but mistaken belief that his vehicle would be safe and reliable and that the vehicle was intended to be a vehicle that could be used on the track or at high speeds and was capable of safely performing these operations.

35.     Mr. Blanks selected and ultimately purchased his vehicle, in part, because the Corvette Z06 was represented to be "track-proven" and "the most capable track-Corvette" ever produced. Mr. Blanks reviewed print and online advertisements showing photographs of the 2016 Corvette Z06 on race tracks and read about how various components in all 2016 Corvette Z06s were "track-proven," such as the suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. None of the information reviewed by Mr. Blanks contained any disclosure relating to any defects in the 2016 Corvette Z06 or that the 2016 Corvette Z06 was unreliable and unsafe when used on the track.

36.     Mr. Blanks' vehicle was equipped with items a reasonable consumer would believe to be present in a vehicle to be used on a track, including special suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. If GM had disclosed to Mr. Blanks that his vehicle's cooling

- 11 -

system suffered from defects that would prevent the full use of his vehicle and pose safety risks, then he would not have purchased the vehicle or he would have paid less for it.

37.    Mr. Blanks planned to use his 2016 Corvette Z06 on the road and on the track but stopped taking it to the track after his vehicle overheated went into Limp Mode on the track after two laps. Due to GM's failure to disclose the cooling defect, Mr. Blanks was denied the benefit of the bargain at the time of sale and paid a premium for a vehicle that he otherwise would have not have. Mr. Blanks has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

**5.    West Virginia Plaintiff**

**a.    Sameer Hamid**

38.    Plaintiff Sameer Hamid is an individual residing in Corpus Christi, Texas. In December 2014, Mr. Hamid purchased a 2015 Corvette Z06 for $106,200 from Hurricane Chevrolet, an authorized GM dealer in Hurricane, West Virginia. The vehicle is covered by a manufacturer's warranty. Mr. Hamid purchased the vehicle for both road and track use.

39.    Mr. Hamid purchased and still owns this vehicle. Unknown to Mr. Hamid at the time he purchased the vehicle, the Corvette Z06 suffered from defects, which has caused him out-of-pocket loss associated with the cooling defect, attempted and future attempted repairs, and diminished value of the vehicle. GM knew about these defects but did not disclose the defects to Mr. Hamid, so he purchased his vehicle on the reasonable but mistaken belief that his vehicle would be safe and reliable and that the vehicle was intended to be a vehicle that could be used on the track or at high speeds and was capable of safely performing these operations.

40.    Mr. Hamid selected and ultimately purchased his vehicle, in part, because the Corvette Z06 was represented to be "track-proven" and "the most track-capable car" ever produced. Mr. Hamid reviewed print and online advertisements showing photographs of the

- 12 -

2015 Corvette Z06 on race tracks and read about how various components in all 2015 Corvette Z06s were "track-proven," such as the suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. None of the information reviewed by Mr. Hamid contained any disclosure relating to any defects in the 2015 Corvette Z06 or that the 2015 Corvette Z06 was unreliable and unsafe when used on the track.

41.     Mr. Hamid's vehicle was equipped with items a reasonable consumer would believe to be present in a vehicle to be used on a track, including special suspension, special steering, special brakes, and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. If GM had disclosed to Mr. Hamid that his vehicle's cooling system suffered from defects that would prevent the full use of his vehicle and pose safety risks, then he would not have purchased the vehicle or he would have paid less for it.

42.     Mr. Hamid's 2015 Corvette Z06 has overheated and gone into Limp Mode on the track several times. He complained and took the vehicle to multiple dealerships to try and resolve the overheating issue. Mr. Hamid eventually stopped driving the vehicle. Due to GM's failure to disclose the cooling defect, Mr. Hamid was denied the benefit of the bargain at the time of sale and paid a premium for a vehicle that he otherwise would have not have. Mr. Hamid has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

**B.     Defendant**

43.     General Motors LLC is a corporation doing business in all 50 states and the District of Columbia, and is organized under the laws of the State of Delaware, with its principal place of business in Dearborn, Michigan. At all times relevant to this action, GM manufactured, sold, leased, and warranted the Z06s at issue throughout the United States. GM and/or its agents

- 13 -

designed, manufactured, and installed the defective cooling systems in the Z06s. GM also developed and disseminated the owner's manuals, supplements, and warranty booklets, advertisements, and other promotional materials relating to the Z06s, and provided these to GM's authorized dealers for the express purpose of having these dealers pass such materials onto potential purchasers. GM also created, designed, and disseminated information about the track capabilities of the Z06 to various agents of various publications for the express purpose of having that information reach potential consumers.

## V.    FACTUAL ALLEGATIONS

### A.    Track Enthusiasts Share a Passion for Racing Their Vehicles on Closed Tracks

44.    There is a segment of car purchasers who buy cars that are designed to be used, in part, on race tracks. Often called "track enthusiasts," these car purchasers are passionate about motorsports and relish a challenging driving experience. Track enthusiasts often purchase their enthusiast vehicle so that they can drive on public roads as well as specialized race tracks. The Z06 has been heavily advertised as track-capable and GM aggressively markets the Z06 to track enthusiasts.

### B.    Specialized Race Tracks Create Safe Conditions for Track Enthusiasts to Pursue Their Passion

45.    Track enthusiasts purchase race cars to drive on closed race tracks. There are dozens of race tracks across the United States where track enthusiasts are allowed to bring their Z06 and operate them at very high speeds on closed tracks that are sealed off from all other highways and roads. A track enthusiast purchases time at a track—usually in thirty-minute increments—and drives on the track with other cars also racing at the same time. Typically, these race tracks provide a safe and welcoming environment for participants to explore the capabilities and limits of their high-performance sports cars while improving their driving skills. Race tracks

- 14 -

can also provide instruction and coaching for drivers of all skill levels. The main priority for both track enthusiasts and race track operators is always safety—both for track drivers and others who may be physically located near the race track. As such, speed and distance is closely monitored and specialized etiquette mores—or rules of the road—must be adhered to at all times.

C.    **"Track-Proven" Vehicles Operate Under Extreme Conditions and Must Meet Certain Basic Safety Features to Operate on a Race Track**

46.    "Track-proven" Z06s routinely reach speeds in excess of 125 mph on specialized race tracks and operate under conditions that place an extreme amount of stress on Z06 systems. To keep track drivers and others safe, "track-proven" Z06s are not equipped in the same way as typical consumer Z06s. Two important differences relate to the transmission system and rear differentials in "track-proven" Z06s.

1.    **Transmission Systems in "Track-Proven" Vehicles**

47.    In the context of motor Z06s, a transmission system takes the power generated by the Z06's engine and applies that power to calibrate the speed and torque of the wheels. This process is accomplished by the driver shifting through different gears. Slower, or lower, gears are used to slow down the output speed of the engine and increase torque. Higher gears increase the output speed and decrease torque. Further, race track conditions often require drivers to change gears extremely quickly—usually in a tiny fraction of a second. As such, the transmission system for "track-proven" Z06s must come equipped with certain features, such as transmission coolers, to cope with the high engine speeds and fast, frequent gear shifts consistent with the rigors of track use. Without these features, the transmission systems in Z06s, for example, will overheat, causing the vehicle to go into Limp Mode. As explained in more detail below, Limp Mode refers to a scenario where, to prevent damage, a Z06 automatically regresses to a lower

- 15 -

RPM (revolutions per minute) with a drastically slower speed, much to the surprise of the individual driver and those driving nearby.

### 2.     Differentials in "Track-Proven" Vehicles

48.     A rear differential is a component in all cars and is designed to compensate for the difference in distance the inner wheels and outer wheels travel as the car goes around a corner. For track drivers—who routinely turn corners while pressing on the gas in a powerful car—poor rear differentials can cause the inside wheel to start to over-spin, leading to less grip and traction. The driver then loses the ability to properly maneuver the outside wheel and can potentially lose control of the Z06. This can result in erratic driving and an increased risk for collisions.

49.     Owners of "track-proven" Z06s therefore must ensure that their rear differentials remain fully operational by allowing for the application of a specialized cooler.

### D.     The Corvette Z06 Was Marketed As If It Could Operate on Race Tracks Because GM Knew This Was Material to Potential Buyers

### 1.     The Product Information Materials Promoted Track Use

50.     From its introduction, GM described the Z06 as fit for the track due to its superior performance technology, as explained in this 2015 vehicle information kit:

> Vehicle Highlights
>
> - All-new model enters **supercar territory with race-proven design**, advanced technologies and world-class performance
>
> - With **track-focused Z07 performance package**, 2015 Corvette Z06 delivers faster lap times than 2014 Corvette ZR1
>
> - First Corvette Z06 to offer supercharged engine, paddle-shift automatic transmission and removable roof panel for coupes, and convertible model
>
> - New LT4 supercharged 6.2L V-8 SAE-certified at 659 hp (485 kW) and 881 Nm of torque

- 16 -

## 2015 CORVETTE Z06 IS THE MOST
## CAPABLE CORVETTE EVER

The Z06 rejoins the Corvette lineup for 2015 as the most capable model in the iconic car's 62-year history. It stretches the performance envelope for Corvette with unprecedented levels of aerodynamic downforce – and it **is the first Corvette Z06 to offer a supercharged engine**, an eight-speed paddle-shift automatic transmission and, thanks to a stronger aluminum frame, a removable roof panel.

The new LT4 supercharged 6.2L V-8 engine is SAE-certified at 650 horsepower (485 kW) at 6,400 rpm and 650 lb-ft of torque (881 Nm) at 3,600 rpm – making the 2015 Corvette Z06 the most powerful production car ever from General Motors and one of the most powerful production cars available in the United States. With the available Z07 package, its capability enables:

- 0-60 mph acceleration in 2.95 seconds with the eight-speed automatic and 3.2 seconds with the seven-speed manual transmission
- Quarter-mile times of 10.95 seconds at 127 mph with the eight-speed and 11.2 seconds at 127 mph with the seven-speed transmission a
- Lateral acceleration of 1.2 g
- 60-0 mph braking in only 99.6 feet – the best of any production car tested by General Motors.

51.    GM's 2015 product information brochure proclaimed that it borrowed from its

Racing Corvette to make the Z06 track ready:

> "The Corvette Z06 is a great example of the technology transfer between racing and production Corvettes," said Juechter. "First, we took what we learned on the Corvette Racing C6.R and applied that to the all-new Corvette Stingray. Then, using the Stingray as a foundation, the Z06 and C7.R were developed to **push the envelope of performance on the street and the track**."

52.    In the brochure, GM also proclaimed that it met performance targets by adding

features to address cooling issues:

> "Practically every exterior change served a functional purpose, as this beast needed more of everything," said Tom Peters, Corvette design director. "The flared fenders accommodate larger, wider

wheels and tires for more grip. **The larger vents provide more cooling air to the engine, brakes, transmission and differential for increased track capability**. The more aggressive aerodynamic package generates true downforce for more cornering grip and high-speed stability."

53.    A high-performance engine running on a track produces high temperatures that must be dealt with. GM assured consumers in its 2015 brochure that the Z06 could handle high temperatures:

> **The exterior design also reflects the increased cooling required for the new Corvette Z06. For example, the mesh pattern on the front fascia was painstakingly designed to deliver the most possible airflow to the supercharger's intercooler heat exchanger**, so much so that the mesh grill directs more air into the engine bay than if the grille was removed.
>
> **Additional cooling elements include larger front fender vents and unique air blades over the inlets on the rear fenders of Coupe models, which force about 50 percent more air into the cooling ducts for the transmission and differential coolers than those on the Stingray**. Convertible models feature under-body inlets. To cope with the additional airflow, Z06 Coupe and Convertible also have larger rear-fascia openings than the Stingray.
>
> **Standard front and rear brake-cooling ducts, including Z06-signature rear ducts integrated in front of the rear fender openings, are also part of the functional design changes over Stingray models**.

54.    To appeal to track enthusiasts, GM, in its 2015 brochure and in other promotional material claiming the Z06 was track proven, stated:

> **Track-proven structure and technologies**
>
> The 2015 Corvette Z06 leverages the technologies introduced on the Corvette Stingray, including the strategic use of lightweight materials and advanced driver technologies, with unique features and calibrations tailored for its capabilities.
>
> "Our mission with the seventh-generation Corvette was to make the performance levels more accessible, enabling drivers to exploit every pound-foot of torque, every "g" of grip and every pound of downforce," said Juechter. "It's a philosophy we introduced with

- 18 -

the 460-horsepower Corvette Stingray – and one that's even more relevant with 650 horsepower at your beck and call."

The new Z06 retains the SLA-type front and rear suspension design of the Corvette Stingray but is uniquely calibrated for the higher performance threshold. The third-generation Magnetic Selective Ride Control dampers are standard on Z06. **They can be adjusted for touring comfort or maximum track performance via the standard Driver Mode Selector**.

**2.      The Features on the Z06 Are Those One Would Expect in a Track-Ready Car**

55.      GM sold the 2015 Z06 with three trim levels: Standard, Areo Package, and Z07 Package. The difference in trims were as follows:

- The standard Z06 features a front splitter, spats around the front wheel openings, a unique carbon-fiber hood with a larger vent, and a rear spoiler

- An available carbon-fiber aero package - in either black or a visible carbon-fiber finish - adds a carbon fiber front splitter with aviation-style winglets, carbon fiber rocker panels, and a larger rear spoiler with a fixed wickerbill, which combine to create true aerodynamic downforce

- The available Z07 package add larger winglets to the front splitter, along with an adjustable, see-through center section on the rear spoiler for track use. With this package, the Corvette Z06 delivers the most aerodynamic downforce of any production car GM has tested.

56.      Additionally, the Z06s were equipped with dozens of features that would suggest to a reasonable person that the vehicles were built with the intention of occasional track use. Some of these features included the following: an LT4 supercharged 6.2L V-8 engine with 650 horsepower at 6,400 rpm and 650 16-ft of torque at 3,600 rpm, making the Z06 "one of the most powerful production cars ever from General Motors"; special tires to deliver the "grip needed for the Z06's performance targets"; special steering and performance brakes; and specific software settings, including a "Track App" and a heads-up tachometer display used for racing. Even the

- 19 -

leather seats were outlined with fabric to mitigate against passengers slipping and sliding in their

seats while taking corners at high speeds.

**3.      The Z06 Owner's Manual Contemplates Track Use**

57.      Track use is contemplated in the Owner's Manual. For example, the 2015 Z06

Owner's Manual contemplates track use:

> **Track Events and Competitive Driving**
>
> Participating in track events or other competitive driving without following the instructions provided may affect the vehicle warranty. See the warranty manual before using the vehicle for racing or other competitive driving.
>
> **Launch Control**
>
> Available only in Track mode for maximum "off-the-line" acceleration when in Competitive or PTM modes.
>
> **Competitive Driving Mode**
>
> If equipped, Competitive Driving Mode, Performance Traction Management, and Launch Control are systems designed to allow increased performance while accelerating and/or cornering. This is accomplished by regulating and optimizing the engine, brakes, and suspension performance. These modes are for use at a closed course race track and are not intended for use on public roads. They will not compensate for driver inexperience or lack of familiarity with the race track. Drivers who prefer to allow the system to have more control of the engine, brake, and suspension are advised to turn the normal traction control and StabiliTrak systems on.

58.     The 2016 Z06 Owner's Manual had additional provisions regarding track use:

**Racing/Track Brake Burnishing Procedure (Z06 with Z07 Performance Package or Z06 with J57 Ceramic Brakes)**

This procedure should only be run on a track and only on dry pavement.

---
**Caution**

Brake pedal fade will occur during this track burnish procedure and can cause brake pedal travel and force to increase. This could extend stopping distance until the brakes are fully burnished.

---

1.  Drive a normal first lap, not too aggressively.

2.  Laps 2 and 3 should be gradually driven faster and more aggressively, while allowing for reduced brake output and increased stopping distance due to brake fade.

3.  Drive Lap 4 near full speed, while allowing for reduced brake output and increased stopping distance due to brake fade.

4.  Laps 5 and 6 should be cool down laps.

5.  Lap 7 should be normal driving or an easy out lap.

**Z07 Performance Package**

The Z07 Performance Package has an installed Stage 2 Aero Package, which consists of a front splitter with short end caps, rocker panel extensions, and a rear spoiler.

Stage 3 Aero components are delivered but not installed on the vehicle. These are intended to be installed for track use only. The components include:

*   Front splitter tall end caps that replace the front splitter short end caps.

*   A center transparent wicker bill for the rear spoiler.

---
**⚠ Warning**

Changing the following track settings could reduce tire traction and could cause a crash. Do not change the track settings.

---

The track settings for the Z07 Performance Package with the Stage 3 Aero Package are:

*   The front splitter tall end caps installed.

*   The center transparent wicker bill installed all the way up on the rear spoiler.

*   The Driver Mode Selector in Track Mode.

**Stingray with Performance Package-Carbon Fiber (CFZ)**

The Stingray with Performance Package-Carbon Fiber (CFZ) has an installed aero package which consists of a front splitter with short end caps, rocker panel extensions, and a rear spoiler. A center transparent wicker bill for the rear

**Competitive Driving Mode**

If equipped, Competitive Driving Mode, Performance Traction Management, and Launch Control are systems designed to allow increased performance while accelerating and/or cornering. This is accomplished by regulating and optimizing the engine, brakes, and suspension performance. These modes are for use at a closed course race track and are not intended for use on public roads. They will not compensate for driver inexperience or lack of familiarity with the race track. Drivers who prefer to allow the system to have more control of the engine, brake, and suspension are advised to turn the normal traction control and StabiliTrak systems on.

---
**Caution**

Attempting to shift when the drive wheels are spinning and do not have traction may cause damage to the transmission. Damage

(Continued)

---

---
**Caution  (Continued)**

caused by misuse of the vehicle is not covered by the vehicle warranty. Do not attempt to shift when the drive wheels do not have traction.

---

**Competitive Driving Mode (Except Z51 and Z06 with Magnetic Ride Control)**

Competitive Driving Mode allows full engine power while StabiliTrak helps maintain directional control of the vehicle by selective brake application. In this mode, TCS is off and Launch Control is available. Adjust your driving style to account for the available engine power. See "Launch Control" later in this section.



## Performance Traction Management (Z51 and Z06 with Magnetic Ride Control)

Performance Traction Management (PTM) integrates the Traction Control, StabiliTrak, and Magnetic Ride Control systems to provide improved and consistent performance when cornering. The amount of available engine power is based on the mode selected, track conditions, driver skill, and the radius of each corner.



This light is on when the vehicle is in the PTM mode.

To select this optional handling mode, the vehicle mode must be Track. Then quickly press the TCS/StabiliTrak 🚗 button on the center console two times. PERF TRAC 1 - WET ACTIVE HANDLING ON displays in the DIC.

To experience the performance benefit of this system, after entering a curve and at the point where normal acceleration occurs, fully push the accelerator pedal. The PTM system will modify the level of engine power for a smooth and consistent corner exit.



The PTM system contains five modes. These modes are selected by turning the Selective Ride Control/Performance Traction Management MODE SELECT knob on the center console. Scroll up or down through modes 1–5 by turning the MODE SELECT knob to the right or left.

The following is a DIC display description and the recommended usage of each mode:

### PERF TRAC 1 – WET ACTIVE HANDLING ON

- Intended for all driver skill levels.
- Wet or damp conditions only — not intended for use in heavy rain or standing water.
- StabiliTrak is on and engine power is reduced based on conditions.

### PERF TRAC 2 – DRY ACTIVE HANDLING ON

- For use by less experienced drivers or while learning a new track.
- Dry conditions only.
- StabiliTrak is on and engine power is slightly reduced.

### PERF TRAC 3 – SPORT ACTIVE HANDLING ON

- For use by drivers who are familiar with the track.
- Dry conditions only.
- Requires more driving skill than mode 2.
- StabiliTrak is on and more engine power is available than in mode 2.

### PERF TRAC 4 – SPORT ACTIVE HANDLING OFF

- For use by drivers who are familiar with the track.
- Dry conditions only.
- Requires more driving skill than modes 2 or 3.
- StabiliTrak is off and available engine power is the same as mode 3.

**PERF TRAC 5 – RACE ACTIVE HANDLING OFF**

- For use by experienced drivers who are familiar with the track.
- Dry conditions only.
- Requires more driving skill than in other modes.
- StabiliTrak is off and engine power is available for maximum cornering speed.

Press and release the TCS/StabiliTrak button to turn off PTM and return to the traction control and StabiliTrak systems. The traction off light and StabiliTrak OFF light will go out.

**Launch Control (Track Mode Only)**

A Launch Control feature is available, within Competitive Driving Mode (except Z51 and Z06 with Magnetic Ride Control) or Performance Traction Management (Z51 and Z06 with Magnetic Ride Control), on all vehicles to allow the driver to achieve high levels of vehicle acceleration in a straight line. Launch Control is a form of traction control that manages tire spin while launching the vehicle. This feature is intended for use during closed course race events where consistent zero to 60 and quarter mile times are desirable.

Launch Control is only available when the following criteria are met:

- Competitive Driving Mode is selected (except Z51 and Z06 with Magnetic Ride Control) or any of the Performance Traction Management modes are selected (Z51 and Z06 with Magnetic Ride Control). The TCS light comes on the instrument panel and the appropriate DIC message displays.
- The vehicle is not moving.
- The steering wheel is pointing straight.

4.    **Press Kits Were Created by GM to Entice Track Enthusiasts to Purchase a Z06**

59.    GM also made available online, and in other forums, different Press Kits outlining the unique features of the Z06. These kits provided a substantial amount of detail on the Z06 as well as several specific misrepresentations that the Z06s were designed to be used on a race track. For example, the 2016 Product Information Kit proclaimed that the Z06 was "track-proven," as had been the claim in the 2015 product kit:

> **Track-proven structure and technologies**
>
> The Corvette Z06 leverages the technologies introduced on the Corvette Stingray, including the strategic use of lightweight

- 23 -

materials and advanced driver technologies, with unique features and calibrations tailored for its capabilities.

Its aluminum frame is produced in-house at General Motors' Bowling Green assembly plant. It's the same robust, lightweight frame used on the Corvette Stingray and it is used essentially unchanged for the C7.R race cars.

60.    The kit described features that were designed for use on the track:

 Chevrolet Product Information

The stiffer design of the aluminum frame allows the Corvette Z06 to be offered with a removable roof panel for the first time. With the lightweight, carbon fiber roof panel removed, the new Corvette Z06 offers 20 percent more structural rigidity than the previous model's fixed-roof design. It is 60 percent stiffer than the previous model with the roof panel installed.

The new Z06 retains the SLA-type front and rear suspension design of the Corvette Stingray but is uniquely calibrated for the higher performance threshold. The third-generation Magnetic Selective Ride Control dampers are standard on Z06. They can be adjusted for touring comfort or maximum track performance via the standard Driver Mode Selector.

Like the Stingray, the Driver Mode Selector tailors up to a dozen features of the Z06 to suit the driver's environment, including:
- **Launch control:** Available in Track mode for manual and automatic transmissions, providing maximum off-the-line acceleration
- **Active handling (StabiliTrak electronic stability control):** A "competitive" setting is available in Track mode and is more suited for on-track conditions. It can also be disabled, giving the driver complete control
- **Traction control:** Weather mode tailors traction control and engine torque for driving in inclement conditions
- **Performance Traction Management:** Available in Track mode and offers five settings of torque reduction and brake intervention for track driving
- **Electronic Limited Slip Differential:** Adjusts the rate at which the limited slip engages to balance between steering response and stability in different driving conditions with more aggressive performance in Sport and Track modes.

The smart electronic limited-slip differential, or eLSD, is standard on the Z06 to make the most of the torque split between the rear wheels. The system features a hydraulically actuated clutch that can infinitely vary clutch engagement and can respond from open to full engagement in tenths of a second. It shifts torque based on a unique algorithm that factors in vehicle speed, steering input and throttle position to improve steering feel, handling balance and traction.

- 24 -

     **5.**     **GM Sponsored Track Events to Demonstrate the "Track-Readiness" of the Z06**

     61.     GM also sponsored several track events where the Z06 was prominently featured and marketed to track enthusiasts and promoted "Corvette Owner's Schools" where Corvette owners were encouraged to develop their track skills.

**E.**     **The Corvette Z06 Cannot Be Safely Raced on the Track Due to Design and Manufacturing Defects in the Cooling System**

     **1.**     **The Nature of the Defects and Their Safety Consequences**

     62.     The performance of a car on the track is a material factor in the decision to purchase a Z06.

     63.     However, Z06s cannot be effectively and safely used on the track due to a defective cooling system. As a result, the engine will overheat if it operates on the track during a typical track session, which causes the Z06 to go into Limp Mode to prevent permanent damage, or causes the driver to see the overheat gauge and pit the car before it goes into Limp Mode. Typically, Z06s in Limp Mode can immediately go from well over 100 mph to a substantially lower speed and lose power. As a result, the driver can become disoriented and lose control of the Z06, increasing the risk of an accident. This scenario is also extremely dangerous for other drivers operating at high speeds nearby who do not expect the car racing in front of them to essentially freeze on the track, thereby putting them at risk for accidents as well.

     64.     The Z06s also contain a manufacturing defect in that unexpected overheating of a powertrain system can damage other essential operations of the vehicle, including the engine, clutch, rear end, and other parts. Coolers are required not only for Z06s that will be used on a race track but for all non-racing Z06s as well, because coolers are required for the purpose of preventing premature failure of the engine, drivetrain, transmission, rear differential, and other parts due to routine high temperatures not experienced in cars with coolers. Thus, track

010687-11 956296

enthusiasts are faced with an impossible choice: (1) allow for overheating events to occur at unexpected times, thereby causing increased safety risks as well as damage to the engine, transmission, drivetrain, differential, and other parts of the Z06; or (2) take a gamble by modifying their car with aftermarket repairs that were not initially envisioned by GM engineers and cross their fingers that such modifications will not affect the performance or long-term reliability of their Z06, let alone the future enforcement of their express warranties. Under either of these scenarios, track enthusiasts are not getting what they bargained for.

65.     Frighteningly, the same Limp Mode can also unexpectedly occur on the road during non-track conditions. If Limp Mode occurs on a public highway, for example, it presents a completely distinct safety issue due to material differences in speed and the skill set of drivers on public roadways as compared to drivers on closed race tracks. Nevertheless, one thing is clear: even with the inherent differences of highway driving, a Z06 rapidly decelerating on a highway is dangerous and can result in a high-speed collision. This defect is unacceptable for customers who own a Z06.

66.     The presence of Limp Mode on public roadways is not some esoteric, distant safety issue. Not only have some Plaintiffs herein alleged that they have experienced Limp Mode while on public roadways, but established publications have also reported the manifestation.

### 2.     The Economic Consequences Associated with the Defects

67.     In addition to the increased safety risks associated with the defects contained in the Z06s, Plaintiffs have also suffered economic harm as a result of GM's fraudulent conduct. First, Plaintiffs estimate that a repair to adequately correct the defects in the Z06 to make them "track-proven" would cost in excess of $20,000, including parts and labor to resolve the transmission issue only. Plaintiffs and Class members are required to pay this amount out-of-pocket as the addition of a proper cooling system is not covered under any of GM's warranties.

- 26 -

Second, Plaintiffs and other Class members who choose not to make these aftermarket repairs lose the ability to operate their "track-proven" Z06s on a race track and risk permanent damage to the engine, transmission, drivetrain, rear differentials, and other parts. Third, the repairs suggested by GM may constitute aftermarket modifications that risk violating enforcement of the express warranties of the Z06s. Thus, they have not received that for which they have bargained.

68.     Plaintiffs have also suffered a diminution of value due to the fact that prospective owners are now aware that if they want to actually drive safely—and conform to the rules and safety habits mandated by virtually all race track organizations—they would need to pay thousands of dollars to get the same mandatory safety features that are now standard on 2017 Z06s. This additional repair, or the inability to use this "track-proven" Z06 on a race track, will factor into the purchase price and decision of prospective buyers. Moreover, the constant overheating leads to warping of the metal parts of the engine, transmission, drivetrain, and other parts. As a result, owners of the Z06s will receive less for their vehicles on the secondary market.

69.     Plaintiffs have also paid considerable sums of money above that of the MSRP for a Z06. These premiums ranged from $1,000 to more than $20,000 on top of the list price and represents further economic loss experienced by Plaintiffs.

## F.     GM Was Aware of the Defects in the 2015-2016 Corvette Z06 While Marketing Them as "Track-Proven"

### 1.     GM Concealed the Fact That the Z06 Was Not Fit for the Track

70.     In the first half of 2015, GM continued to make repeated false statements that Z06s were "track-proven" and "the most track-capable car" ever produced while knowing that they were unfit and unsafe for track use. Further, it is not possible that GM suddenly learned of this defect as manufacturers spend a year or more testing new models. GM had been testing Z06s on the track prior to introduction to the market and had to have discovered this defect. GM

refused to disclose the defects to the public and the fact that Z06s were unfit and unsafe for race track use during this time, or that the Z06s would enter the dangerous Limp Mode if taken onto a race track and operated at high speeds.

### 2. GM Admits That the Z06's Cooling System Was Defective

71. GM admitted that its Z06 had a cooling defect when it halted production in 2016 to find a solution to the overheating issue. GM admitted that it was responding to complaints of overheating and that its solution for the 2017 model was to switch to a new hood with larger vents and a new supercharger cover.

72. The alleged "fix" does not help consumers with 2015 or 2016 Z06s. A third party, Hennessey, offers a fix in the form of a High-Flow Heat Exchanger with a Cold Induction System but at a cost of $20,000.

### 3. GM Had Knowledge of the Defect from Consumer Complaints

73. Manufacturers like GM have employees who monitor internet forums and other places where consumers discuss dissatisfaction. GM monitored forums about the Z06 and knew from product launch about the overheating issue, and it was aware of the issue as shown below.

74. On or about February 22, 2015, Tadge Juechter (Corvette's Chief Engineer) stated the following, acknowledging GM's awareness of the overheating problem in the Z06s:

> The Z06 Automatic transmission put in "Drive" selects the lowest possible gear ratio for best acceleration, and because it has 8 closely-spaced ratios typically runs higher average RPM than the manual. This optimizes lap time performance, but also taxes the engine oil and coolant more for any given track. So the automatic has the capability to run faster laps than the manual, but thermal limitations are reached more quickly. Customers who are planning to run extended track-day sessions at 'professional' speeds, are advised to go with the manual transmission, or to paddle shift the automatic and select higher gears when conditions warrant it.
>
> Any time the maximum recommended temperatures are reached in any condition, the DIC will give warnings at the appropriate time

for coolant, oil, or transmission fluid. A cool-down lap or two will bring operating temperatures back to a reasonable level and aggressive track driving can be resumed.

Some may wonder why don't we design to higher temperatures, say 110 degrees, to accommodate southern tracks in the Summer. We have used the "pro driver at 86 degrees" criteria for generations of Corvettes and for the vast majority of customers, it has resulted in excellent performance for their usage. If we designed to higher temperature criteria, we would have to add a lot of cooling hardware which drives mass up and perhaps more importantly, you have to feed the system with more air which has a huge impact on appearance and aerodynamic drag. Like most aspects of car design, the challenge is in finding the best balance of conflicting requirements.

75.    One forum GM closely monitored was "StingrayForums.com." The following is one example of a complaint that GM was aware of, which was posted in May 2014:



76.     The following is another complaint, posted in 2015 on a forum that GM

monitored, commenting on "many" reports of overheating:



77.     The following is another forum post on StingrayForums.com:



78.     In the summer of 2015, GM was aware of the overheating issue and issued a

forum post telling Z06 owners that the car was built to race in temperatures up to 86°F and that a

higher temperature "affects all cars abilities to run sustained laps." The following is a post on

Stingrayforums.com where a consumer states in response:





79.    The following is a May 22, 2015 forum post regarding overheating in the Z06:



80.   The following is a forum post concerning "the mammoth overheating problem":

*13 THOUGHTS ON "2015 CHEVY CORVETTE Z06: OVERHEATING ISSUE. IS IT THE 8-SPEED TRANSMISSION'S FAULT?"*

Art Woosley

September 30, 2015 at 7:47 pm
The overheat issue and worse is squarely sitting on the narrow shoulders of Chevrolet. The know only to well that the ZO6 engine was a bomb waiting to explode and suffers mammoth overheating problem. Was the problem addressed before the car was released? Hell NO! Chevrolet decided to disregard and disrespect the valued customer and instead worship the dollar. I am FINISHED with Chevy and am finished with the GM vendetta on consumers.
GM = GREAT MISTAKE

81.   The following is a post suggesting that the problem deserves a class action:

Robert Kennedy

June 1, 2016 at 4:54 pm
I recently bought a 2016 Corvette Z06 C7.R Edition. 1st open track day, 1st run, 12 minutes in, oil temp goes to 320 deg. and alarms go off on the dash. I immediately slow down and the alarms stop and oil temp comes down slowly but my track day is done and any other future track days. I'm very disappointed with this vehicle given how GM is advertising the vehicle. I'm now exploring aftermarket options to correct this problem. My understanding is there are other owners of this vehicle experiencing the same problem therefore we should come together and start a class action lawsuit against GM.

82.   GM was aware of the continuous series of complaints, like those above, that continued to be posted on various online forums.

## G.   Despite Express Warranties, GM Has Not Fixed the Problems with the "Track-Proven" Powertrain System

83.   In connection with the sale (by purchase or lease) of its new Z06s, GM provides an express limited warranty on each Z06. In the warranty, GM promises to repair any defect or malfunction that arises in the Z06 during a defined period of time. This warranty is provided by GM to Z06 owners in writing and regardless of what state the Z06 was purchased in.

84.   Each Plaintiff was provided a warranty and it was the basis of the purchase of their Z06s.

- 33 -

85.     In its Limited Warranty and in advertisements, brochures, press kits, and other statements in the media, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. The following uniform language appears in all Chevrolet Warranty Guides:[1]

> GM will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.
>
> **What is Covered**
>
> **Warranty Applies**
>
> This warranty is for GM vehicles registered in the United States and normally operated in the United States or Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> **Repairs Covered**
>
> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.
>
> **No Charge**
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

86.     With regard to the Corvette Z06, the duration of the limited warranty for bumper-to-bumper protection is three years or 36,000 miles, whichever occurs first. The powertrain warranty is five years or 56,000 miles, whichever occurs first. The "warranty period . . . begins on the date the vehicle is first delivered or put in use."[2] These terms were identical for all Z06s.

---

[1] *2016 Chevrolet Limited Warranty and Owner Assistance Information*, available at https://my.chevrolet.com/content/dam/gmownercenter/gmna/dynamic/manuals/2016/Chevrolet/Multi-Model%20PDFs/2k16chevylimitedwty3rdPrint.pdf, at p. 4.

[2] *Id.*

- 34 -

87.     All Plaintiffs and Class members experienced defects in their powertrain systems within the warranty period. However, despite the existence of the express warranties provided to Plaintiffs and Class members, GM has failed to honor the terms of the warranties by failing to, "at no charge," repair to correct the defect.[3]

88.     Thus, it is impossible for owners to seek relief, even at their own expense, and still maintain the validity of their express warranty.

## VI.    CLASS ALLEGATIONS

89.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:[4]

**Nationwide Class**

All persons or entities in the United States who are current or former owners and/or lessees of a 2015-2017 Chevrolet Corvette Z06 (the "Nationwide Class").

**Florida Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Florida (the "Florida Class").

**Alabama Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Alabama (the "Alabama Class").

**Alaska Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Alaska (the "Alaska Class").

---

[3] *Id.*

[4] Collectively, the "Class," unless otherwise noted.

010687-11 956296

**Arizona Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Arizona (the "Arizona Class").

**Arkansas Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Arkansas (the "Arkansas Class").

**California Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of California (the "California Class").

**Colorado Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Colorado (the "Colorado Class").

**Connecticut Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Connecticut (the "Connecticut Class").

**Delaware Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Delaware (the "Delaware Class").

**Georgia Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Georgia (the "Georgia Class").

**Hawaii Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Hawaii (the "Hawaii Class").

**Idaho Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Idaho (the "Idaho Class").

**Illinois Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Illinois (the "Illinois Class").

010687-11 956296

**Indiana Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Indiana (the "Indiana Class").

**Iowa Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Iowa (the "Iowa Class").

**Kansas Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Kansas (the "Kansas Class").

**Kentucky Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Kentucky (the "Kentucky Class").

**Louisiana Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Louisiana (the "Louisiana Class").

**Maine Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Maine (the "Maine Class").

**Maryland Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Maryland (the "Maryland Class").

**Massachusetts Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Massachusetts (the "Massachusetts Class").

**Michigan Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Michigan (the "Michigan Class").

**Minnesota Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Minnesota (the "Minnesota Class").

010687-11 956296

**Mississippi Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Mississippi (the "Mississippi Class").

**Missouri Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Missouri (the "Missouri Class").

**Montana Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Montana (the "Montana Class").

**Nebraska Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Nebraska (the "Nebraska Class").

**Nevada Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Nevada (the "Nevada Class").

**New Hampshire Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of New Hampshire (the "New Hampshire Class").

**New Jersey Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of New Jersey (the "New Jersey Class").

**New Mexico Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of New Mexico (the "New Mexico Class").

**New York Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of New York (the "New York Class").

**North Carolina Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of North Carolina (the "North Carolina Class").

010687-11 956296

**North Dakota Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of North Dakota (the "North Dakota Class").

**Ohio Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Ohio (the "Ohio Class").

**Oklahoma Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Oklahoma (the "Oklahoma Class").

**Oregon Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Oregon (the "Oregon Class").

**Pennsylvania Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Pennsylvania (the "Pennsylvania Class").

**Rhode Island Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Rhode Island (the "Rhode Island Class").

**South Carolina Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of South Carolina (the "South Carolina Class").

**South Dakota Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of South Dakota (the "South Dakota Class").

**Tennessee Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Tennessee (the "Tennessee Class").

**Texas Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Texas (the "Texas Class").

010687-11 956296

**Utah Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Utah (the "Utah Class").

**Vermont Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Vermont (the "Vermont Class").

**Virginia Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Virginia (the "Virginia Class").

**Washington Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Washington (the "Washington Class").

**West Virginia Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of West Virginia (the "West Virginia Class").

**Wisconsin Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Wisconsin (the "Wisconsin Class").

**Wyoming Class**

All persons or entities who purchased or leased a 2015-2017 Chevrolet Corvette Z06 in the State of Wyoming (the "Wyoming Class").

90.     Excluded from the Class are individuals who have personal injury claims resulting from the operation of a Z06. Also excluded from the Class are General Motors LLC and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

91.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

92.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

93.     Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from GM's books and records. At this point Plaintiffs allege there are 8,653 2015 Z06 Class members, 14,275 Z06 2016 Class members, and over 10,000 2017 Class members. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, Internet postings, and/or published notice.

94.     Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

> a)    Whether GM engaged in the conduct alleged herein;
>
> b)    Whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed Z06s into the stream of commerce in the United States;
>
> c)    Whether the Z06 contains defects;
>
> d)    Whether such defects cause the Z06 to malfunction;
>
> e)    Whether GM knew about the defects and, if so, how long GM has known of the defects;

- 41 -

      f)      Whether GM designed, manufactured, marketed, and distributed Z06s with a defective "track-proven" powertrain system;

      g)      Whether GM's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

      h)      Whether GM knew or should have known that the defects existed with regard to the Z06;

      i)      Whether GM knew or reasonably should have known of the defects in the Z06 before it sold or leased them to Class members;

      j)      Whether Plaintiffs and the other Class members overpaid for their Z06s as a result of the defects alleged herein;

      k)      Whether Plaintiffs and the other Class members are entitled to equitable relief; and

      l)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

95.      <u>Typicality</u>: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through GM's wrongful conduct as described above.

96.      <u>Adequacy</u>: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

97.      <u>Declaratory and Injunctive Relief</u>: Federal Rule of Civil Procedure 23(b)(2): GM has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

98.    <u>Superiority</u>: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against GM, so it would be impracticable for Class members to individually seek redress for GM's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.    CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301 *ET SEQ.*)

99.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

100.    Plaintiffs bring this Count on behalf of the Nationwide Class.

101.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

102.    GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

- 43 -

103.    The Z06 is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

104.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

105.    GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

106.    GM breached these warranties as described in more detail above. Without limitation, the Z06 is equipped with a defective "track-proven" powertrain system. The Z06s share a common design defect in that the system fails to operate as represented by GM.

107.    Plaintiffs and the other Nationwide Class members have had sufficient direct dealings with either GM or its agents to establish privity of contract between GM on one hand and Plaintiffs and each of the other Class members on the other hand. GM-authorized dealerships and technical support organizations operating under contract to GM are agents of GM. Nonetheless, privity is not required here because Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between GM and its dealers. The dealers were not intended to be the ultimate consumers of the Z06s and have no rights under the warranty agreements provided with the Z06s; the warranty agreements were designed for and intended to benefit the consumers only.

108.    Giving GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Plaintiffs have already done so and GM has failed, after numerous attempts, to cure the defects. As explained above, any solution offered by GM must be exclusively paid for by Plaintiffs and Nationwide Class members, which is a violation of GM's promise to repair and replace without charge. All solutions offered by GM are also

- 44 -

aftermarket alterations and therefore undertaking these repairs may represent a new violation of the express warranties on the part of Plaintiffs and Nationwide Class members. At the time of sale or lease of each Z06, GM knew, should have known, or was reckless in not knowing, of its omissions and/or misrepresentations concerning the Z06's inability to perform as warranted, but it nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or give GM a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

109.    Plaintiffs and the other Nationwide Class members would suffer economic hardship if they returned their Z06s but did not receive the return of all payments made by them. Because GM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Nationwide Class members have not re-accepted their Z06s by retaining them.

110.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

111.    Plaintiffs, individually and on behalf of the other Nationwide Class members, seek all damages permitted by law, including diminution in value of the Z06s and/or loss of the benefit of the bargain, in an amount to be proven at trial.

## COUNT TWO

### VIOLATION OF THE FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201 *ET SEQ.*)

112.    Plaintiffs Michael Vazquez and Michael Malone ("Plaintiffs" for purposes of all Florida Class Counts) hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

113.    Plaintiffs bring this Count on behalf of the Florida Class.

114.    The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

115.    Plaintiffs and Florida Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

116.    GM engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

117.    In the course of business, GM willfully failed to disclose and actively concealed the "track-proven" powertrain system defects discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Z06s.

118.    By failing to disclose that defective "track-proven" vehicle, GM engaged in deceptive business practices in violation of the FUDTPA.

119.     GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Florida Class members, about the true value of the Z06s.

120.     GM intentionally and knowingly misrepresented material facts regarding the Z06s with intent to mislead Plaintiffs and the Florida Class.

121.     GM knew or should have known that their conduct violated the FUDTPA.

122.     As alleged above, GM made material statements about the safety and performance of the Z06s and the GM brand that were either false or misleading.

123.     GM owed Plaintiffs a duty to disclose the true performance, and reliability of the Z06s, because GM:

>       a.     Possessed exclusive knowledge that they were selling and distributing Z06s throughout the United States that did not perform as advertised;
>
>       b.     Intentionally concealed the foregoing from and the Florida Class; and/or
>
>       c.     Made incomplete representations about the safety and performance of the Z06s as set forth above, while purposefully withholding material facts from Plaintiffs and the Florida Class that contradicted these representations.

124.     Because GM fraudulently concealed the defect in "track-proven" system and the Z06s inability to be used safely on a race track, Plaintiffs were deprived of the benefit of the bargain and the value of the Z06s has greatly diminished. In light of the stigma attached to those Z06s by GM's conduct, they are now worth significantly less than they otherwise would be.

125.     GM's omissions and/or misrepresentations about the track performance and safety concerns of the Z06s are material to Plaintiffs and the Florida Class.

126.     Plaintiffs and Florida Class members suffered ascertainable loss caused by GM's misrepresentations and their concealment of and failure to disclose material information.

Plaintiffs and Florida Class members who purchased Z06s either would have paid less for their Z06s or would not have purchased or leased them at all but for GM's violations of the FUDTPA.

127.   GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the FUDTPA. All owners of Z06s suffered ascertainable loss in the form of loss of the benefit of their bargain and the diminished value of their Z06s as a result of GM's deceptive and unfair acts and practices made in the course of GM's business.

128.   GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

129.   As a direct and proximate result of GM's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

130.   Plaintiffs and Florida Class members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

131.   Plaintiffs also seek an order enjoining GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the FUDTPA.

## COUNT THREE

### FRAUDULENT CONCEALMENT
### (BASED ON FLORIDA LAW)

132.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

133.   Plaintiffs bring this claim on behalf of the Florida Class.

134.   GM intentionally concealed the defects contained in the "track-proven" powertrain systems that render Z06s unfit for track use, in that the transmissions of these Z06s would overheat when placed under track conditions and unexpectedly go into Limp Mode after

- 48 -

approximately 15 minutes, creating a dangerous hazard not only to the Z06 drivers but also to nearby racing vehicles. GM concealed the fact that the only way for Z06s to become "track-proven" as advertised is for GM owners to buy rear differential and transmission coolers at their own expense and potentially in violation of their express warranties.

135.    GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Z06s had no significant defects and were "track-proven."

136.    GM knew about the defects in the "track-proven" powertrain system when these representations were made.

137.    The Z06s purchased by Plaintiffs and the other Florida Class members contained a defective "track-proven" powertrain system.

138.    GM had a duty to disclose that the "track-proven" powertrain system contained defects as alleged herein and that these defects created a safety hazard. Plaintiffs and the other Florida Class members relied on GM's material representations.

139.    As alleged herein, at all relevant times, GM has held out the Z06s to be free from defects such as the defects related to the "track-proven" powertrain system. GM touted and continues to tout the many benefits and advantages of the "track-proven" powertrain system, but nonetheless failed to disclose important facts related to the defects and that Florida Class members would be required to make additional aftermarket modifications to adequately achieve "track-proven" performance, and that these modifications may violate their express warranties. This made GM's other disclosures about the "track-proven" powertrain system deceptive.

010687-11 956296

140.    The truth about the defective "track-proven" powertrain system was known only to GM; Plaintiffs and the other Florida Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and the other Florida Class members.

141.    Plaintiffs and the other Florida Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, Plaintiffs and the other Florida Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and the other Florida Class members by concealing the true facts about the Z06's "track-proven" powertrain systems.

142.    GM's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Z06s that played a significant role in the value of the Z06s and forced Florida Class members to make additional expenditures to ensure proper safety at the race track.

143.    GM had a duty to disclose the defects inherent in the "track-proven" powertrain system and violations with respect to the Z06s because details of the true facts were known and/or accessible only to GM, because GM had exclusive and/or superior knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Florida Class members.

144.    GM also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Z06s, without telling consumers that the defective "track-proven" powertrain system would affect the safety, quality, and performance of the Z06.

145. GM's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the "track-proven" powertrain system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Z06s purchased by Plaintiffs and the other Florida Class members.

146. GM has still not made full and adequate disclosures and continues to defraud Plaintiffs and the other Florida Class members by concealing material information regarding the defects in the "track-proven" powertrain system.

147. Plaintiffs and the other Florida Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty powertrain systems and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and the other Florida Class members' actions were justified. GM was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Florida Class members.

148. Because of the concealment and/or suppression of facts, Plaintiffs and the other Florida Class members sustained damages because they lost the benefit of the bargain and own(ed) Z06s that are diminished in value as a result of GM's concealment of the true quality of the Z06's "track-proven" powertrain systems. Had Plaintiffs and the other Florida Class members been aware of the defects in the "track-proven" powertrain systems installed in the Z06s, and the company's disregard for the truth, Plaintiffs and the other Florida Class members who purchased a Z06 would have paid less for their Z06s or would not have purchased them at all.

010687-11 956296

149.     Plaintiffs have been deprived of the benefit of their bargain and the value of Plaintiffs' and the other Florida Class members' Z06s has diminished as a result of GM's fraudulent concealment of the defective "track-proven" powertrain system of the Z06s, which has made any reasonable consumer reluctant to purchase any of the Z06s, let alone pay what otherwise would have been fair market value for the Z06s.

150.     Accordingly, GM is liable to Plaintiffs and the other Florida Class members for damages in an amount to be proven at trial.

151.     GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the other Florida Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT FOUR

### BREACH OF EXPRESS WARRANTY
### (FLA. STAT. § 672.313)

152.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

153.     Plaintiffs bring this claim on behalf of the Florida Class.

154.     Plaintiffs were each at all relevant times a "buyer" as defined by Fla. Stat. § 672.103.

155.     GM was at all relevant times a "merchant" as defined by Fla. Stat. § 672.104.

156.     The Z06s are and were at all relevant times "goods" as defined by Fla. Stat. § 672.105.

157. As an express warrantor and manufacturer and merchant, GM had certain obligations under Fla. Stat. § 672.313 to conform the Z06s to the express warranties.

158. When Plaintiffs and the other Class members purchased or leased their Z06s, GM expressly warranted in writing that the Z06s were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain. GM expressly warranted that at "no charge" it will repair "any vehicle defect." GM breached its warranty obligations by selling inherently defective Z06s.

159. The defects at issue in this litigation were present at the time of sale and lease to Plaintiffs and members of the Class.

160. GM breached the Limited Warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by GM as GM has been unable to repair or adjust the Z06's materials and workmanship defects.

161. Furthermore, the Limited Warranty of repair and/or adjustments to effective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

162. Pursuant to the express warranties, GM was obligated to pay for or reimburse Plaintiffs and the other Florida Class members for costs incurred in purchasing after-market coolers for the transmission and differential systems and other costs associated with bringing their Z06s to the dealership for futile repair efforts. GM was also obligated to repair the defects.

163. Accordingly, recovery by Plaintiffs and the other Florida Class members is not limited to the Limited Warranty of repair or adjustments to parts defective in materials or

workmanship, and Plaintiffs and the other Florida Class members seek all remedies as allowed by law.

164. Also, as alleged in more detail herein, at the time that GM warranted and sold the Z06s, and while knowing that the Z06s did not conform to GM's Limited Warranty and were inherently defective, GM wrongfully and fraudulently concealed material facts regarding the Z06s. Plaintiffs and the other Class members were therefore induced to purchase the Z06s under false and/or fraudulent pretenses.

165. GM and its agent dealers have failed and refused to conform the Z06s to the express warranties and GM's conduct and has voided any attempt on its part to disclaim liability for its actions.

166. Moreover, many of the damages flowing from the Z06s cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to the GM's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

167. GM received timely notice regarding the problems at issue in this litigation (indeed, GM knew of the defects prior to offering the Z06s for sale or lease). GM was also provided notice of these issues through the receipt of numerous complaints regarding the Limp Mode manifestations. GM has received, on information and belief, many complaints from Florida Class members advising them of the defects at issue in this litigation.

168.    Plaintiffs have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of GM or by operation of law in light of GM's unconscionable conduct.

169.    Plaintiffs have had sufficient dealings with either GM or its agents (dealerships and/or GM Performance) to establish privity of contract. Privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between GM and its dealers; specifically, they are the intended beneficiaries of GM's express warranties and these warranties were advertised to Plaintiffs and the other Class members as the ultimate consumers. The dealers were not intended to be the ultimate consumers of the Z06s and have no rights under the warranty agreements provided with the Z06s; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

170.    As a direct and proximate result of GM's breach of express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value.

## COUNT FIVE

### UNJUST ENRICHMENT
### (BASED ON FLORIDA LAW)

171.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

172.    Plaintiffs bring this claim on behalf of the Florida Class.

173.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Florida Class members.

- 55 -

174.   GM has voluntarily accepted and retained this benefit.

175.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Florida Class members.

176.   Plaintiffs and the other Florida Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT SIX

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)

177.   Plaintiff Jonathan White ("Plaintiff" for purposes of all New Jersey Class Counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

178.   Plaintiff brings this claim on behalf of the New Jersey Class.

179.   The New Jersey Consumer Fraud Act (New Jersey CFA) makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J. Stat. Ann. § 56:8-2.

180.   Defendant, Plaintiff, and New Jersey Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

181.    Defendant engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

182.    In the course of GM's business, it willfully failed to disclose and actively concealed that the "track-proven" powertrain system was defective as set forth herein. Accordingly, GM engaged in unfair and deceptive trade practices, including representing that Z06s have characteristics, uses, benefits, and qualities which they do not have; representing that Z06s are of a particular standard and quality when they are not; advertising Z06s with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, GM's acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because GM fraudulently concealed the defective nature of the Z06s from consumers.

183.    GM's actions as set forth herein occurred in the conduct of trade or commerce.

184.    GM's conduct proximately caused injuries to Plaintiff and the other New Jersey Class members.

185.    Plaintiff and the other New Jersey Class members were injured as a result of GM's conduct in that Plaintiff and the other New Jersey Class members overpaid for their Z06s and did not receive the benefit of their bargain, and their Z06s have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

186.    Plaintiff is entitled to recover legal and/or equitable relief, including an order enjoining Defendant's unlawful conduct, treble damages, costs, and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

187.    Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint.

**COUNT SEVEN**

**FRAUD BY CONCEALMENT**
**(BASED ON NEW JERSEY LAW)**

188.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

189.    Plaintiff brings this claim on behalf of the New Jersey Class.

190.    GM intentionally concealed that the defects contained in the "track-proven" powertrain system render Z06s unfit for track use, in that the transmissions of these vehicles would overheat when placed under track conditions and unexpectedly go into Limp Mode after less than 15 minutes, creating a dangerous hazard not only to the drivers, but also to nearby racing vehicles. GM concealed the fact that the only way for the Z06s to become "track-proven" as advertised was for GM owners to buy rear differential and transmission coolers for their 2016 model year cars—at their own expense and potentially in violation of their express warranties.

191.    GM further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Z06 it was selling had no significant defects, and that all Z06s were "track-proven."

192.    GM knew about the defects in the "track-proven" powertrain system when these representations were made.

193.    The Z06s purchased by Plaintiff and the other Class members contained a defective "track-proven" powertrain system.

- 58 -

194.    GM had a duty to disclose that the "track-proven" powertrain system contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the other Class members relied on GM's material representations.

195.    As alleged herein, at all relevant times, GM has held out the Z06s to be free from defects such as the defects related to the "track-proven" powertrain system. GM touted and continues to tout the many benefits and advantages of the "track-proven" powertrain system, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and other Class members would be required to make additional aftermarket modifications to adequately achieve "track-proven" performance, and that these modifications may violate their express warranties. This made GM's other disclosures about the "track-proven" powertrain system deceptive.

196.    The truth about the defective "track-proven" powertrain system was known only to GM; Plaintiff and the other Class members did not know of these facts and GM actively concealed these facts from Plaintiff and the other Class members.

197.    Plaintiff and the other Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiff and the other Class members by concealing the true facts about the Z06's "track-proven" powertrain systems.

198.    GM's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Z06s that played a significant role in the value of the vehicles and forced Plaintiff and the other Class members to make additional expenditures to ensure proper safety at the race track.

2:18-cv-11266-VAR-APP   Doc # 1   Filed 04/23/18   Pg 70 of 193   Pg ID 70

199.    GM had a duty to disclose the defects inherent in the "track-proven" powertrain system and violations with respect to the Z06s because details of the true facts were known and/or accessible only to GM, because GM had exclusive and/or superior knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiff or the other Class members.

200.    GM also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Z06s, without telling consumers that the defective "track-proven" powertrain system would affect the safety, quality, and performance of the vehicle.

201.    GM's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the "track-proven" powertrain system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Z06s purchased by Plaintiff and the other Class members.

202.    GM has still not made full and adequate disclosures and continues to defraud Plaintiff and the other Class members by concealing material information regarding the defects in the "track-proven" powertrain system.

203.    Plaintiff and the other Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty powertrain systems and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Class members' actions were justified. GM was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or other Class members.

010687-11 956296

204.    Because of the concealment and/or suppression of facts, Plaintiff and the other Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of GM's concealment of the true quality of those vehicles' "track-proven" powertrain systems. Had Plaintiff and the other Class members been aware of the defects in the "track-proven" powertrain systems installed in the Z06s, and the company's disregard for the truth, Plaintiff and the other Class members who purchased a Z06 would have paid less for their vehicles or would not have purchased them at all.

205.    The value of Plaintiff's and the other Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective "track-proven" powertrain system of the Z06s, which has made any reasonable consumer reluctant to purchase any of the Z06s, let alone pay what otherwise would have been fair market value for the vehicles.

206.    Accordingly, GM is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

207.    GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT EIGHT

### BREACH OF EXPRESS WARRANTY
### (N.J. STAT. ANN. § 12A:2-313)

208.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

209.    Plaintiff brings this claim on behalf of the New Jersey Class.

- 61 -

210.    GM is and was at all relevant times a merchant with respect to motor vehicles.

211.    When Plaintiff and the other Class members purchased or leased their Z06s, GM expressly warranted in writing that the Z06s were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain.

212.    The defects at issue in this litigation were present at the time of sale and lease to Plaintiff and members of the Class.

213.    GM breached the Limited Warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by GM as GM has been unable to repair or adjust the Z06's materials and workmanship defects.

214.    Furthermore, the Limited Warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

215.    Pursuant to the express warranties, GM was obligated to pay for or reimburse Plaintiff and the other New Jersey Class members for costs incurred in purchasing after-market coolers for the transmission and differential systems and other costs associated with bringing their Z06s to the dealership for futile repair efforts. GM was also obligated to repair the defects.

216.    Accordingly, recovery by the Plaintiff and the other New Jersey Class members is not limited to the Limited Warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the other New Jersey Class members seek all remedies as allowed by law.

217.    Also, as alleged in more detail herein, at the time that GM warranted and sold the Z06s, and while knowing that the Z06s did not conform to GM's Limited Warranty and were

- 62 -

inherently defective, GM wrongfully and fraudulently concealed material facts regarding the Z06s. Plaintiff and the other New Jersey Class members were therefore induced to purchase the Z06s under false and/or fraudulent pretenses.

218.    GM and its agent dealers have failed and refused to conform the Z06s to the express warranties and GM's conduct and has voided any attempt on its part to disclaim liability for its actions.

219.    Moreover, many of the damages flowing from the Z06s cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to the GM's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other New Jersey Class members' remedies would be insufficient to make Plaintiff and the other New Jersey Class members whole.

220.    GM received timely notice regarding the problems at issue in this litigation (indeed GM knew of the defects prior to offering the Z06s for sale or lease). GM was also provided notice of these issues through the receipt of numerous complaints regarding the Limp Mode manifestations. GM has received, on information and belief, many complaints from New Jersey Class members advising them of the defects at issue in this litigation.

221.    Plaintiff has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of GM or by operation of law in light of GM's unconscionable conduct.

222.    Plaintiff has had sufficient dealings with either GM or its agents (dealerships and/or GM Performance) to establish privity of contract. Privity is not required in this case

because Plaintiff and the other New Jersey Class members are intended third-party beneficiaries of contracts between GM and its dealers; specifically, they are the intended beneficiaries of GM's express warranties and these warranties were advertised to Plaintiff and the other New Jersey Class members as the ultimate consumers. The dealers were not intended to be the ultimate consumers of the Z06s and have no rights under the warranty agreements provided with the Z06s; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

223.    As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other New Jersey Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value.

## COUNT NINE
## UNJUST ENRICHMENT
## (BASED ON NEW JERSEY LAW)

224.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

225.    Plaintiff brings this claim on behalf of the New Jersey Class.

226.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other New Jersey Class members.

227.    GM has voluntarily accepted and retained this benefit.

228.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other New Jersey Class members.

010687-11 956296

229.     Plaintiff and the other New Jersey Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

### COUNT TEN

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1 *ET SEQ.*)

230.     Plaintiff Brian Nakel ("Plaintiff" for purposes of all Pennsylvania Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

231.     Plaintiff brings this claim on behalf of the Pennsylvania Class.

232.     Plaintiff and Pennsylvania Class members purchased or leased their Z06s primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

233.     All of the acts complained of herein were perpetrated by GM in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

234.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, …. Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

235.     In the course of business, GM willfully failed to disclose and actively concealed the "track-proven" powertrain system defects discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

- 65 -

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Z06s.

236.     By failing to disclose that defective "track-proven" vehicle, GM engaged in deceptive business practices in violation of the Pennsylvania CPL.

237.     GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Pennsylvania Class members, about the true value of the Z06s.

238.     GM intentionally and knowingly misrepresented material facts regarding the Z06s with intent to mislead Plaintiff and the Pennsylvania Class.

239.     GM knew or should have known that their conduct violated the Pennsylvania CPL.

240.     As alleged above, GM made material statements about the safety and performance of the Z06s and the GM brand that were either false or misleading.

241.     GM owed Plaintiff a duty to disclose the true performance, and reliability of the Z06s, because GM:

a.     Possessed exclusive knowledge that they were selling and distributing Z06s throughout the United States that did not perform as advertised;

b.     Intentionally concealed the foregoing from and the Pennsylvania Class; and/or

c.     Made incomplete representations about the safety and performance of the Z06s as set forth above, while purposefully withholding material facts from Plaintiff and the Pennsylvania Class that contradicted these representations.

242.     Because GM fraudulently concealed the defect in "track-proven" system and the Z06s inability to be used safely on a race track, Plaintiff was deprived of the benefit of the

- 66 -

bargain and the value of the Z06s has greatly diminished. In light of the stigma attached to those Z06s by GM's conduct, they are now worth significantly less than they otherwise would be.

243.    GM's omissions and/or misrepresentations about the track performance and safety concerns of the Z06s are material to Plaintiff and the Pennsylvania Class.

244.    Plaintiff and Pennsylvania Class members suffered ascertainable loss caused by GM's misrepresentations and their concealment of and failure to disclose material information. Plaintiff and Pennsylvania Class members who purchased Z06s either would have paid less for their Z06s or would not have purchased or leased them at all but for GM's violations of the Pennsylvania CPL.

245.    GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the Pennsylvania CPL. All owners of Z06s suffered ascertainable loss in the form of the diminished value of their Z06s as a result of GM's deceptive and unfair acts and practices made in the course of GM's business.

246.    GM's violations present a continuing risk to Plaintiff as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

247.    As a direct and proximate result of GM's violations of the Pennsylvania CPL, Plaintiff and the Pennsylvania Class have suffered injury-in-fact and/or actual damage.

248.    GM is liable to Plaintiff and the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiff and the Pennsylvania Class are also entitled to an award of punitive damages given that GM's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT ELEVEN

### FRAUDULENT CONCEALMENT
### (BASED ON PENNSYLVANIA LAW)

249.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

250.    Plaintiff brings this claim on behalf of the Pennsylvania Class.

251.    GM intentionally concealed the defects contained in the "track-proven" powertrain systems that render Z06s unfit for track use, in that the transmissions of these Z06s would overheat when placed under Track conditions and unexpectedly go into Limp Mode after approximately 15 minutes, creating a dangerous hazard not only to the drivers but also to nearby racing Z06s. GM concealed the fact that the only way for the Z06s to become "track-proven" as advertised was for GM owners to buy rear differential and transmission coolers for their 2016 model year cars—at their own expense and potentially in violation of their express warranties.

252.    GM further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Z06s it was selling had no significant defects that all Z06s were "track-proven."

253.    GM knew about the defects in the "track-proven" powertrain system when these representations were made.

254.    The Z06s purchased by Plaintiff and the other Pennsylvania Class members contained a defective "track-proven" powertrain system.

255.    GM had a duty to disclose that the "track-proven" powertrain system contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the other Pennsylvania Class members relied on GM's material representations.

256.     As alleged herein, at all relevant times, GM has held out the Z06s to be free from defects such as the defects related to the "track-proven" powertrain system. GM touted and continues to tout the many benefits and advantages of the "track-proven" powertrain system, but nonetheless failed to disclose important facts related to the defects and that Pennsylvania Class members would be required to make additional aftermarket modifications to adequately achieve "track-proven" performance, and that these modifications may violate their express warranties. This made GM's other disclosures about the "track-proven" powertrain system deceptive.

257.     The truth about the defective "track-proven" powertrain system was known only to GM; Plaintiff and the other Pennsylvania Class members did not know of these facts and GM actively concealed these facts from Plaintiff and the other Pennsylvania Class members.

258.     Plaintiff and the other Pennsylvania Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other Pennsylvania Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiff and the other Pennsylvania Class members by concealing the true facts about the Z06's "track-proven" powertrain systems.

259.     GM's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Z06s that played a significant role in the value of the Z06s and forced Pennsylvania Class members to make additional expenditures to ensure proper safety at the race track.

260.     GM had a duty to disclose the defects inherent in the "track-proven" powertrain system and violations with respect to the Z06s because details of the true facts were known and/or accessible only to GM, because GM had exclusive and/or superior knowledge as to such

010687-11 956296

facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiff or Pennsylvania Class members.

261.   GM also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Z06s, without telling consumers that the defective "track-proven" powertrain system would affect the safety, quality, and performance of the Z06.

262.   GM's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the "track-proven" powertrain system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Z06s purchased by Plaintiff and the other Pennsylvania Class members.

263.   GM has still not made full and adequate disclosures and continues to defraud Plaintiff and the other Pennsylvania Class members by concealing material information regarding the defects in the "track-proven" powertrain system.

264.   Plaintiff and the other Pennsylvania Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty powertrain systems and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Pennsylvania Class members' actions were justified. GM was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or Pennsylvania Class members.

265.   Because of the concealment and/or suppression of facts, Plaintiff and the other Pennsylvania Class members sustained damage because they own(ed) Z06s that are diminished

in value as a result of GM's concealment of the true quality of the Z06's "track-proven" powertrain systems. Had Plaintiff and the other Pennsylvania Class members been aware of the defects in the "track-proven" powertrain systems installed in the Z06s, and the company's disregard for the truth, Plaintiff and the other Pennsylvania Class members who purchased a Z06 would have paid less for their Z06s or would not have purchased them at all.

266.    Plaintiff has been deprived of the benefit of his bargain and the value of Plaintiff's and the other Pennsylvania Class members' Z06s has diminished as a result of GM's fraudulent concealment of the defective "track-proven" powertrain system of the Z06s, which has made any reasonable consumer reluctant to purchase any of the Z06s, let alone pay what otherwise would have been fair market value for the Z06s.

267.    Accordingly, GM is liable to Plaintiff and the other Pennsylvania Class members for damages in an amount to be proven at trial.

268.    GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Pennsylvania Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT TWELVE

### BREACH OF EXPRESS WARRANTY
### (13 PA. CONS. STAT. ANN. § 2313)

269.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

270.    Plaintiff brings this claim on behalf of the Pennsylvania Class.

271.    Plaintiff was at all relevant times a "buyer" as defined by § 2-103.

- 71 -

272.    GM was at all relevant times a "seller" as defined by § 2-103.

273.    The Z06s are and were at all relevant times "goods" as defined by § 2-105.

274.    As an express warrantor and manufacturer and merchant, GM had certain obligations under 13 Pa. Cons. Stat. Ann. § 2313 to conform the Z06s to the express warranties.

275.    When Plaintiff and the other Class members purchased or leased their Z06s, GM expressly warranted in writing that the Z06s were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain. GM expressly warranted that at "no charge" it will repair "any vehicle defect." GM breached its warranty obligations by selling inherently defective Z06s.

276.    The defects at issue in this litigation were present at the time of sale and lease to Plaintiff and members of the Class.

277.    GM breached the Limited Warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by GM as GM has been unable to repair or adjust the Z06's materials and workmanship defects.

278.    Furthermore, the Limited Warranty of repair and/or adjustments to effective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

279.    Pursuant to the express warranties, GM was obligated to pay for or reimburse Plaintiff and the other Class members for costs incurred in purchasing after-market coolers for the transmission and differential systems and other costs associated with bringing their Z06s to the dealership for futile repair efforts. GM was also obligated to repair the defects.

280.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the Limited Warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the other Class members seek all remedies as allowed by law.

281.    Also, as alleged in more detail herein, at the time that GM warranted and sold the Z06s, and while knowing that the Z06s did not conform to GM's Limited Warranty and were inherently defective, GM wrongfully and fraudulently concealed material facts regarding the Z06s. Plaintiff and the other Class members were therefore induced to purchase the Z06s under false and/or fraudulent pretenses.

282.    GM and its agent dealers have failed and refused to conform the Z06s to the express warranties and GM's conduct and has voided any attempt on its part to disclaim liability for its actions.

283.    Moreover, many of the damages flowing from the Z06s cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to the GM's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

284.    GM received timely notice regarding the problems at issue in this litigation (indeed GM knew of the defects prior to offering the Z06s for sale or lease). GM was also provided notice of these issues through the receipt of numerous complaints regarding the Limp Mode manifestations. GM has received, on information and belief, many complaints from Class members advising them of the defects at issue in this litigation.

285.    Plaintiff has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of GM or by operation of law in light of GM's unconscionable conduct.

286.    Plaintiff has had sufficient dealings with either GM or its agents (dealerships and/or GM Performance) to establish privity of contract. Privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between GM and its dealers; specifically, they are the intended beneficiaries of GM's express warranties and these warranties were advertised to Plaintiff and the other Class members as the ultimate consumers. The dealers were not intended to be the ultimate consumers of the Z06s and have no rights under the warranty agreements provided with the Z06s; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

287.    As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value.

## COUNT THIRTEEN

### UNJUST ENRICHMENT
### (BASED ON PENNSYLVANIA LAW)

288.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

289.    Plaintiff brings this claim on behalf of the Pennsylvania Class.

290.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Pennsylvania Class members.

- 74 -

291.    GM has voluntarily accepted and retained this benefit.

292.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Pennsylvania Class members.

293.    Plaintiff and the other Pennsylvania Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT FOURTEEN

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT (TEX. BUS. & COM. CODE § 17.4 ET SEQ.)

294.    Plaintiff Jedediah Blanks ("Plaintiff" for purposes of all Texas Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

295.    Plaintiff intends to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46. Plaintiff will make a demand in satisfaction of Tex. Bus. & Com. Code § 17.45(2), and may amend this Complaint to assert claims under the TDTPA once the required 60 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the TDTPA. A statutory notice letter was sent to GM on June 9, 2017.

**COUNT FIFTEEN**

**FRAUD BY CONCEALMENT**
**(BASED ON TEXAS LAW)**

296.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

297.   Plaintiff brings this claim on behalf of the Texas Class.

298.   GM intentionally concealed that the defects contained in the "track-proven" powertrain system render Z06s unfit for track use, in that the transmissions of these vehicles would overheat when placed under track conditions and unexpectedly go into Limp Mode after less than 15 minutes, creating a dangerous hazard not only to the drivers, but also to nearby racing vehicles. GM concealed the fact that the only way for the Z06s to become "track-proven" as advertised was for GM owners to buy rear differential and transmission coolers for their 2016 model year cars—at their own expense and potentially in violation of their express warranties.

299.   GM further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Z06 it was selling had no significant defects, and that all Z06s were "track-proven."

300.   GM knew about the defects in the "track-proven" powertrain system when these representations were made.

301.   The Z06s purchased by Plaintiff and the other Class members contained a defective "track-proven" powertrain system.

302.   GM had a duty to disclose that the "track-proven" powertrain system contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the other Class members relied on GM's material representations.

303.    As alleged herein, at all relevant times, GM has held out the Z06s to be free from defects such as the defects related to the "track-proven" powertrain system. GM touted and continues to tout the many benefits and advantages of the "track-proven" powertrain system, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and other Class members would be required to make additional aftermarket modifications to adequately achieve "track-proven" performance, and that these modifications may violate their express warranties. This made GM's other disclosures about the "track-proven" powertrain system deceptive.

304.    The truth about the defective "track-proven" powertrain system was known only to GM; Plaintiff and the other Class members did not know of these facts and GM actively concealed these facts from Plaintiff and the other Class members.

305.    Plaintiff and the other Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiff and the other Class members by concealing the true facts about the Z06's "track-proven" powertrain systems.

306.    GM's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Z06s that played a significant role in the value of the vehicles and forced Plaintiff and the other Class members to make additional expenditures to ensure proper safety at the race track.

307.    GM had a duty to disclose the defects inherent in the "track-proven" powertrain system and violations with respect to the Z06s because details of the true facts were known and/or accessible only to GM, because GM had exclusive and/or superior knowledge as to such

facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiff or the other Class members.

308.   GM also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Z06s, without telling consumers that the defective "track-proven" powertrain system would affect the safety, quality, and performance of the vehicle.

309.   GM's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the "track-proven" powertrain system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Z06s purchased by Plaintiff and the other Class members.

310.   GM has still not made full and adequate disclosures and continues to defraud Plaintiff and the other Class members by concealing material information regarding the defects in the "track-proven" powertrain system.

311.   Plaintiff and the other Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty powertrain systems and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Class members' actions were justified. GM was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or other Class members.

312.   Because of the concealment and/or suppression of facts, Plaintiff and the other Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of GM's concealment of the true quality of those vehicles' "track-proven" powertrain

systems. Had Plaintiff and the other Class members been aware of the defects in the "track-proven" powertrain systems installed in the Z06s, and the company's disregard for the truth, Plaintiff and the other Class members who purchased a Z06 would have paid less for their vehicles or would not have purchased them at all.

313.    The value of Plaintiff's and the other Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective "track-proven" powertrain system of the Z06s, which has made any reasonable consumer reluctant to purchase any of the Z06s, let alone pay what otherwise would have been fair market value for the vehicles.

314.    Accordingly, GM is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

315.    GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT SIXTEEN

### BREACH OF EXPRESS WARRANTY
### (TEX. BUS & COM. CODE ANN. §2-313)

316.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

317.    Plaintiff brings this claim on behalf of the Texas Class.

318.    Plaintiff was at all relevant times a "buyer" as defined by Tex. Bus. & Com. Code Ann. § 1-201(9).

- 79 -

319.   GM was at all relevant times a "merchant" as defined by Tex. Bus. & Com. Code Ann. § 2-104.

320.   The Z06s are and were at all relevant times "goods" as defined by Tex. Bus. & Com. Code Ann. § 2105.

321.   As an express warrantor and manufacturer and merchant, GM had certain obligations under Tex. Bus & Com. Code Ann. § 2-313 to conform the Z06s to the express warranties.

322.   When Plaintiff and the other Class members purchased or leased their Z06s, GM expressly warranted in writing that the Z06s were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain.

323.   The defects at issue in this litigation were present at the time of sale and lease to Plaintiff and members of the Class.

324.   GM breached the Limited Warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by GM as GM has been unable to repair or adjust the Z06's materials and workmanship defects.

325.   Furthermore, the Limited Warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

326.   Pursuant to the express warranties, GM was obligated to pay for or reimburse Plaintiff and the other Class members for costs incurred in purchasing after-market coolers for the transmission and differential systems and other costs associated with bringing their Z06s to the dealership for futile repair efforts. GM was also obligated to repair the defects.

327. Accordingly, recovery by the Plaintiff and the other Class members is not limited to the Limited Warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the other Class members seek all remedies as allowed by law.

328. Also, as alleged in more detail herein, at the time that GM warranted and sold the Z06s, and while knowing that the Z06s did not conform to GM's Limited Warranty and were inherently defective, GM wrongfully and fraudulently concealed material facts regarding the Z06s. Plaintiff and the other Class members were therefore induced to purchase the Z06s under false and/or fraudulent pretenses.

329. GM and its agent dealers have failed and refused to conform the Z06s to the express warranties and GM's conduct and has voided any attempt on its part to disclaim liability for its actions.

330. Moreover, many of the damages flowing from the Z06s cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to the GM's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

331. GM received timely notice regarding the problems at issue in this litigation (indeed GM knew of the defects prior to offering the Z06s for sale or lease). GM was also provided notice of these issues through the receipt of numerous complaints regarding the Limp Mode manifestations. GM has received, on information and belief, many complaints from Class members advising them of the defects at issue in this litigation.

332.   Plaintiff has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of GM or by operation of law in light of GM's unconscionable conduct.

333.   Plaintiff has had sufficient dealings with either GM or its agents (dealerships and/or GM Performance) to establish privity of contract. Privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between GM and its dealers; specifically, they are the intended beneficiaries of GM's express warranties and these warranties were advertised to Plaintiff and the other Class members as the ultimate consumers. The dealers were not intended to be the ultimate consumers of the Z06s and have no rights under the warranty agreements provided with the Z06s; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

334.   As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value.

## COUNT SEVENTEEN

### UNJUST ENRICHMENT
### (BASED ON TEXAS LAW)

335.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

336.   Plaintiff brings this claim on behalf of the Texas Class.

337.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Class members.

338.    GM has voluntarily accepted and retained this benefit.

339.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Class members.

340.    Plaintiff and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT EIGHTEEN

### VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT (W. VA. CODE § 46A-1-101 *ET SEQ.*)

341.    Plaintiff Sameer Hamid ("Plaintiff" for purposes of all West Virginia Class Counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

342.    Plaintiff intends to bring this claim on behalf of himself and West Virginia Class.

343.    GM is a "person" under W. Va. Code § 46A-1-102(31).

344.    Plaintiff is a "consumer" as defined by W. Va. Code §§ 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Defective Vehicles.

345.    The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." W. Va. Code § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include:

(I)     Advertising goods or services with intent not to sell them as advertised;

(K)     Making false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions;

(L)     Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

- 83 -

(M)   The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby;

(N)   Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive; W. Va. Code § 46A-6-102(7).

346.   Plaintiff intends to assert a claim under the West Virginia Consumer Credit and Protection Act ("West Virginia CCPA"), which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104. Plaintiff will make a demand in satisfaction of W. VA. CODE § 46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once the required 20 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CCPA.

## COUNT NINETEEN

### FRAUDULENT CONCEALMENT
### (BASED ON WEST VIRGINIA LAW)

347.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

348.   Plaintiff brings this claim on behalf of the West Virginia Class.

349.   GM intentionally concealed the defects contained in the "track-proven" powertrain systems that render Corvette Z06s unfit for track use, in that the transmissions of these Corvette Z06s would overheat when placed under Track conditions and unexpectedly go into Limp Mode after approximately 15 minutes, creating a dangerous hazard not only to the

- 84 -

drivers but also to nearby racing vehicles. GM concealed the fact that the only way for Corvette Z06s to become "track-proven" as advertised is for GM owners to buy rear differential and transmission coolers for their 2015-2016 model year cars—at their own expense and potentially in violation of their express warranties.

350.    GM further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Corvette Z06s it was selling had no significant defects that all Corvette Z06s were "track-proven."

351.    GM knew about the defects in the "track-proven" powertrain system when these representations were made.

352.    The Corvette Z06s purchased by Plaintiff and the other West Virginia Class members contained a defective "track-proven" powertrain system.

353.    GM had a duty to disclose that the "track-proven" powertrain system contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the other West Virginia Class members relied on GM's material representations.

354.    As alleged herein, at all relevant times, GM has held out the Corvette Z06s to be free from defects such as the defects related to the "track-proven" powertrain system. GM touted and continues to tout the many benefits and advantages of the "track-proven" powertrain system, but nonetheless failed to disclose important facts related to the defects and that West Virginia Class members would be required to make additional aftermarket modifications to adequately achieve "track-proven" performance, and that these modifications may violate their express warranties. This made GM's other disclosures about the "track-proven" powertrain system deceptive.

010687-11 956296

355.    The truth about the defective "track-proven" powertrain system was known only to GM; Plaintiff and the other West Virginia Class members did not know of these facts and GM actively concealed these facts from Plaintiff and the other West Virginia Class members.

356.    Plaintiff and the other West Virginia Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other West Virginia Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiff and the other West Virginia Class members by concealing the true facts about the Corvette Z06's "track-proven" powertrain systems.

357.    GM's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Corvette Z06s that played a significant role in the value of the Corvette Z06s and forced Plaintiff and the other West Virginia Class members to make additional expenditures to ensure proper safety at the race track.

358.    GM had a duty to disclose the defects inherent in the "track-proven" powertrain system and violations with respect to the Corvette Z06s because details of the true facts were known and/or accessible only to GM, because GM had exclusive and/or superior knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiff or West Virginia Class members.

359.    GM also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Corvette Z06s, without telling consumers that the defective "track-proven" powertrain system would affect the safety, quality, and performance of the Corvette Z06.

360.    GM's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the "track-proven" powertrain system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Z06s purchased by Plaintiff and the other West Virginia Class members.

361.    GM has still not made full and adequate disclosures and continues to defraud Plaintiff and the other West Virginia Class members by concealing material information regarding the defects in the "track-proven" powertrain system.

362.    Plaintiff and the other West Virginia Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty powertrain systems and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff and the other West Virginia Class members' actions were justified. GM was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or West Virginia Class members.

363.    Because of the concealment and/or suppression of facts, Plaintiff and the other West Virginia Class members sustained damage because they own(ed) Corvette Z06s that are diminished in value as a result of GM's concealment of the true quality of those Corvette Z06's "track-proven" powertrain systems. Had Plaintiff and the other West Virginia Class members been aware of the defects in the "track-proven" powertrain systems installed in the Corvette Z06s, and the company's disregard for the truth, Plaintiff and the other West Virginia Class members who purchased a Corvette Z06 would have paid less for their vehicles or would not have purchased them at all.

364.    Plaintiff has been deprived of the benefit of his bargain and the value of Plaintiff's and the other West Virginia Class members' Corvette Z06s have diminished as a result of GM's fraudulent concealment of the defective "track-proven" powertrain system of the Corvette Z06s, which has made any reasonable consumer reluctant to purchase any of the Corvette Z06s, let alone pay what otherwise would have been fair market value for the Corvette Z06s.

365.    Accordingly, GM is liable to Plaintiff and the other West Virginia Class members for damages in an amount to be proven at trial.

366.    GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff and the other West Virginia Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT TWENTY

### BREACH OF EXPRESS WARRANTY
### (W. VA. CODE § 46-2-313)

367.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

368.    Plaintiff brings this claim on behalf of the West Virginia Class.

369.    GM is and was at all relevant times a seller of motor vehicles under W. Va. Code § 46-2-313, and is also a "merchant" as the term is used in W. Va. Code § 46A-6-107.

370.    When Plaintiff and the other Class members purchased or leased their Corvette Z06s, GM expressly warranted in writing that the Corvette Z06s were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain. GM expressly

warranted that at "no charge" it will repair "any vehicle defect." GM breached its warranty obligations by selling inherently defective Corvette Z06s.

371.    The defects at issue in this litigation were present at the time of sale and lease to Plaintiff and members of the Class.

372.    GM breached the Limited Warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by GM as GM has been unable to repair or adjust the Corvette Z06's materials and workmanship defects.

373.    Furthermore, the Limited Warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

374.    Pursuant to the express warranties, GM was obligated to pay for or reimburse Plaintiff and the other Class members for costs incurred in purchasing after-market coolers for the transmission and differential systems and other costs associated with bringing their Corvette Z06s to the dealership for futile repair efforts. GM was also obligated to repair the defects.

375.    Accordingly, recovery by the Plaintiff and the other Class members is not limited to the Limited Warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the other Class members seek all remedies as allowed by law.

376.    Also, as alleged in more detail herein, at the time that GM warranted and sold the Corvette Z06, and while knowing that the vehicles did not conform to GM's Limited Warranty and were inherently defective, GM wrongfully and fraudulently concealed material facts regarding the Corvette Z06. Plaintiff and the other Class members were therefore induced to purchase their vehicles under false and/or fraudulent pretenses.

377.   GM and its agent dealers have failed and refused to conform the Corvette Z06 to the express warranties, and GM's conduct and has voided any attempt on its part to disclaim liability for its actions.

378.   Moreover, many of the damages flowing from the Corvette Z06 cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to the GM's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

379.   GM received timely notice regarding the problems at issue in this litigation (indeed GM knew of the defects prior to offering the Corvette Z06 for sale or lease). GM was also provided notice of these issues through the receipt of numerous complaints regarding the Limp Mode manifestations. GM has received, on information and belief, many complaints from Class members advising them of the defects at issue in this litigation.

380.   Plaintiff has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of GM or by operation of law in light of GM's unconscionable conduct.

381.   Plaintiff has had sufficient dealings with either GM or its agents (dealerships and/or GM Performance) to establish privity of contract. Privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between GM and its dealers; specifically, they are the intended beneficiaries of GM's express warranties and these warranties were advertised to Plaintiff and the other Class members as the ultimate consumers. The dealers were not intended to be the ultimate consumers of the vehicles

and have no rights under the warranty agreements provided with the vehicle; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

382.    As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value.

383.    Finally, due to the Defendant's breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in W. Va. Code § 46A-6A-4, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under W. Va. Code § 46A-6A-1 *et seq.*

## COUNT TWENTY-ONE

## UNJUST ENRICHMENT
### (BASED ON WEST VIRGINIA LAW)

384.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

385.    Plaintiff brings this claim on behalf of the West Virginia Class.

386.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Class members.

387.    GM has voluntarily accepted and retained this benefit.

388.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Class members.

- 91 -

389.    Plaintiff and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## VIII.   FRAUDULENT CONCEALMENT CLAIMS

### COUNT TWENTY-TWO

### FRAUD BY CONCEALMENT
### FOR REMAINING STATES

390.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

391.    This claim is brought by Plaintiffs on behalf of residents of the following states based on the substantial similarity between the law of fraudulent concealment in all states:

| | | |
|---|---|---|
| Alabama | Kentucky | North Carolina |
| Alaska | Louisiana | North Dakota |
| Arizona | Maine | Ohio |
| Arkansas | Maryland | Oklahoma |
| California | Massachusetts | Oregon |
| Colorado | Michigan | Rhode Island |
| Connecticut | Minnesota | South Carolina |
| Delaware | Mississippi | South Dakota |
| Georgia | Missouri | Tennessee |
| Hawaii | Montana | Utah |
| Idaho | Nebraska | Vermont |
| Illinois | Nevada | Virginia |
| Indiana | New Hampshire | Washington |
| Iowa | New Mexico | Wisconsin |
| Kansas | New York | Wyoming |

392.    GM intentionally concealed that the defects contained in the "track-proven" powertrain system render Z06s unfit for track use, in that the transmissions of these vehicles would overheat when placed under track conditions and unexpectedly go into Limp Mode after less than 15 minutes, creating a dangerous hazard not only to the drivers, but also to nearby racing vehicles. GM concealed the fact that the only way for the Z06s to become "track-proven"

- 92 -

as advertised was for GM owners to buy rear differential and transmission coolers for vehicles—
at their own expense and potentially in violation of their express warranties.

393.    GM further affirmatively misrepresented to Plaintiffs in advertising and other
forms of communication, including standard and uniform material provided with each car and on
its website, that the Z06 it was selling had no significant defects, and that all Z06s were "track-
proven."

394.    GM knew about the defects in the "track-proven" powertrain system when these
representations were made.

395.    The Z06s purchased by Plaintiffs and the other Class members contained a
defective "track-proven" powertrain system.

396.    GM had a duty to disclose that the "track-proven" powertrain system contained
defects as alleged herein and that these defects created a safety hazard. Plaintiffs and the other
Class members relied on GM's material representations.

397.    As alleged herein, at all relevant times, GM has held out the Z06s to be free from
defects such as the defects related to the "track-proven" powertrain system. GM touted and
continues to tout the many benefits and advantages of the "track-proven" powertrain system, but
nonetheless failed to disclose important facts related to the defect and that Plaintiffs and other
Class members would be required to make additional aftermarket modifications to adequately
achieve "track-proven" performance, and that these modifications may violate their express
warranties. This made GM's other disclosures about the "track-proven" powertrain system
deceptive.

398.    The truth about the defective "track-proven" powertrain system was known only to GM; Plaintiffs and the other Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and the other Class members.

399.    Plaintiffs and the other Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, Plaintiffs and the other Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and the other Class members by concealing the true facts about the Z06's "track-proven" powertrain systems.

400.    GM's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Z06s that played a significant role in the value of the vehicles and forced Plaintiffs and the other Class members to make additional expenditures to ensure proper safety at the race track.

401.    GM had a duty to disclose the defects inherent in the "track-proven" powertrain system and violations with respect to the Z06s because details of the true facts were known and/or accessible only to GM, because GM had exclusive and/or superior knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or the other Class members.

402.    GM also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Z06s, without telling consumers that the defective "track-proven" powertrain system would affect the safety, quality, and performance of the vehicle.

403.    GM's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the "track-proven"

- 94 -

powertrain system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Z06s purchased by Plaintiffs and the other Class members.

404. GM has still not made full and adequate disclosures and continues to defraud Plaintiffs and the other Class members by concealing material information regarding the defects in the "track-proven" powertrain system.

405. Plaintiffs and the other Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty powertrain systems and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and the other Class members' actions were justified. GM was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiffs, or other Class members.

406. Because of the concealment and/or suppression of facts, Plaintiffs and the other Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of GM's concealment of the true quality of those vehicles' "track-proven" powertrain systems. Had Plaintiffs and the other Class members been aware of the defects in the "track-proven" powertrain systems installed in the Z06s, and the company's disregard for the truth, Plaintiffs and the other Class members who purchased a Z06 would have paid less for their vehicles or would not have purchased them at all.

407. The value of Plaintiffs' and the other Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective "track-proven" powertrain system of the Z06s, which has made any reasonable consumer reluctant to purchase any of the Z06s, let alone pay what otherwise would have been fair market value for the vehicles.

408.     Accordingly, GM is liable to Plaintiffs and the other Class members for damages in an amount to be proven at trial.

409.     GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## IX.    STATUTORY CLAIMS

410.     Plaintiffs assert statutory consumer protection claims on behalf of consumers in other states as follows based on substantial similarity of the law:

411.     In the course of business, GM willfully failed to disclose and actively concealed the "track-proven" powertrain system defects discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Z06s.

412.     By failing to disclose that the defective "track-proven" powertrain system, by marketing GM Z06s as safe, reliable, and of high quality, and by presenting GM as a reputable manufacturer that valued safety and stood behind their Z06s after they were sold, GM engaged in deceptive business practices in violation of the below state consumer protection statutes.

413.     GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Class members, about the true performance of the Z06, the devaluing of safety and performance at GM, and the true value of the Z06s.

- 96 -

414.   GM intentionally and knowingly omitted material facts regarding the Z06s with intent to mislead Plaintiffs and the other Class members.

415.   GM knew or should have known that their conduct violated the below state consumer protection statutes.

416.   As alleged above, GM made material statements about the safety and performance of the Z06s and the GM brand that were either false or misleading.

417.   GM owed Plaintiffs and the other Class members a duty to disclose the true safety, performance, and reliability of the Z06s, because GM:

      a.   Possessed exclusive knowledge that they were selling and distributing Z06s throughout the United States that did not perform as advertised;

      b.   Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

      c.   Made incomplete representations about the safety and performance of the Z06s, purposefully withholding material facts from Plaintiffs and the other Class members that contradicted these representations.

418.   Because GM fraudulently concealed the defective "track-proven" powertrain system and the Z06s inability to be used safely on a race track, the value of the Z06 has greatly diminished. In light of the stigma attached to those Z06s, by GM's conduct, they are now worth significantly less than they otherwise would be.

419.   GM's omissions and/or misrepresentations about the track performance and safety concerns of the Z06s are material to Plaintiffs and the other Class members.

420.   Plaintiffs and the other Class members suffered ascertainable loss caused by GM's misrepresentations and their concealment of and failure to disclose material information. Plaintiffs and the other Class members who purchased Z06s either would have paid less for their

Z06s or would not have purchased or leased them at all but for GM's violations of the below state consumer protection statutes.

421.    GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the below state consumer protection statutes. All owners of Z06s suffered ascertainable loss in the form of the diminished value of their Z06s as a result of GM's deceptive and unfair acts and practices made in the course of GM's business.

422.    GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

### COUNT TWENTY-THREE

### VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT (ALA. CODE § 8-19-1 *ET SEQ.*)

423.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

424.    This claim is brought by Plaintiffs on behalf of residents of Alabama who are members of the Class.

425.    The Alabama Deceptive Trade Practices Act (Alabama DTPA) declares several specific actions to be unlawful, including: "(11) Making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions"; and "(27) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

426.    Plaintiffs and Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

427.    Plaintiffs, Class members, and GM are "persons" within the meaning of Ala. Code § 8-19-3(3).

- 98 -

428.    Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

429.    Pursuant to Alabama Code § 8-19-10, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each plaintiff.

430.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ala. Code § 8-19-1 *et seq.*

431.    On June 9, 2017, Plaintiffs sent a letter complying with Ala. Code § 8-19-10(e) to Defendant. Should Defendant fail to remedy its unlawful conduct within the requisite period, Plaintiffs will amend to seek all damages and relief to which they are entitled.

### COUNT TWENTY-FOUR

### VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT. ANN. § 45.50.471 *ET SEQ.*)

432.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

433.    This claim is brought by Plaintiffs on behalf of residents of Alaska who are members of the Class.

434.    The Alaska Unfair Trade Practices and Consumer Protection Act (Alaska CPA) declared unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including "(10) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the

- 99 -

concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. Ann. § 45.50.471.

435. Pursuant to Alaska Stat. Ann. § 45.50.531, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each plaintiff.

436. Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices pursuant to Alaska Stat. Ann. § 45.50.535(b)(1), attorneys' fees, and any other just and proper relief available under the Alaska CPA.

437. On June 9, 2017, Plaintiffs sent a letter complying with Alaska Stat. Ann. § 45.50.535(b)(1) to Defendant.

## COUNT TWENTY-FIVE

### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV. STAT. § 44-1521 *ET SEQ.*)

438. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

439. This claim is brought by Plaintiffs on behalf of residents of Arizona who are members of the Class.

440. The Arizona Consumer Fraud Act (Arizona CFA) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

- 100 -

441.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of the Arizona CFA, Ariz. Rev. Stat. § 44-1521(6).

442.    Each Z06 at issue is "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

443.    Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

444.    Pursuant to the Arizona CFA, Plaintiffs seek monetary relief against Defendant in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind.

445.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT TWENTY-SIX

## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT (ARK. CODE ANN. § 4-88-101 *ET SEQ.*)

446.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

447.    This claim is brought by Plaintiffs on behalf of residents of Arkansas who are members of the Class.

448.    The Arkansas Deceptive Trade Practices Act (Arkansas DTPA) prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, "[e]ngaging in any . . . unconscionable false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits, in connection with the sale or advertisement of any goods, "(1) the act, use, or employment by any person of

- 101 -

any deception, fraud, or pretense; or (2) the concealment, suppression, or omission of any material fact with intent that other rely upon the concealment, suppression, or omission." Ark Code Ann. § 4-88-108.

449.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of Ark. Code Ann. § 4-88-102(5).

450.    Each Z06 at issue constitutes "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

451.    Plaintiffs seek monetary relief against Defendant in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendant acted wantonly in causing Plaintiffs' and Class members' injuries, or with such a conscious indifference to the consequences that malice may be inferred.

452.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT TWENTY-SEVEN

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

453.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

454.    This claim is brought by Plaintiffs on behalf of residents of California who are members of the Class.

455.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

- 102 -

456. GM's conduct, as described herein, was and is in violation of the UCL. GM's conduct violates the UCL in at least the following ways:

      i.      By knowingly and intentionally concealing from Plaintiffs and the other California Class members that the Z06s suffer from defects while obtaining money from Plaintiffs and California Class members;

      ii.      By marketing Z06s as being useable on a track;

      iii.      By failing to disclose that the Z06's "track-proven" powertrain system is defective as it is not equipped with a transmission cooler and rear differential cooler, leading to overheating of the powertrain system and the Z06s unexpectedly going into Limp Mode—a dangerous scenario that significantly increases the likelihood of collisions both on the race track and on public highways;

      iv.      By refusing or otherwise failing to repair and/or replace defective Z06s;

      v.      By violating federal laws, including the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; and

      vi.      By violating other California laws, including Cal. Civ. Code §§ 1709, 1710, and 1750 *et seq.*, and Cal. Com. Code § 2313.

457. GM's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other California Class members to make their purchases or leases of their Z06s. Absent those omissions and/or misrepresentations, Plaintiffs and the other California Class members would not have purchased or leased these Z06s, would not have purchased or leased these Z06s at the prices they paid, and/or would have purchased or leased less expensive alternative Z06s that clearly indicated that they were not for track use.

458. Accordingly, Plaintiffs and the other California Class members have suffered injury in fact, including lost money or property, as a result of GM's misrepresentations and omissions.

459. Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by GM under Cal. Bus. & Prof. Code § 17200.

460.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin GM from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the California Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## COUNT TWENTY-EIGHT

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)

461.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

462.    This claim is brought by Plaintiffs on behalf of residents of California who are members of the Class.

463.    Cal. Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

464.    GM has violated Cal. Bus. & Prof. Code § 17500 because the omissions and/or misrepresentations regarding the safety, reliability, and functionality of its Z06s as set forth in this Complaint were material and likely to deceive a reasonable consumer.

465.    Plaintiffs and the other California Class members have suffered an injury in fact, including the loss of money or property, as a result of GM's unfair, unlawful, and/or deceptive

- 104 -

practices. In purchasing or leasing their Z06s, Plaintiffs and the other California Class members relied on the omissions and/or misrepresentations of GM with respect to the safety and reliability of the Z06s. GM's representations turned out not to be true because the Z06s have "track-proven" powertrain systems that are defective as they are not equipped with a transmission cooler and rear differential cooler, leading to overheating of the powertrain system and the Z06s unexpectedly going into Limp Mode—a dangerous scenario that significantly increases the likelihood of collisions both on the race track and on public highways. Had Plaintiffs and the other California Class members known this, they would not have purchased or leased their Z06s and/or paid as much for them. Accordingly, Plaintiffs and the other California Class members overpaid for their Z06s and did not receive the benefit of their bargain.

466.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of GM's business. GM's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

467.    Plaintiffs, individually and on behalf of the other California Class members, request that this Court enter such orders or judgments as may be necessary to enjoin GM from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other California Class members any money GM acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT TWENTY-NINE

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750 *ET SEQ.*)

468.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

469.    This claim is brought by Plaintiffs on behalf of residents of California who are members of the Class.

470.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

471.    The Z06s are "goods" as defined in Cal. Civ. Code § 1761(a).

472.    Plaintiffs and the other California Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other California Class members, and GM are "persons" as defined in Cal. Civ. Code § 1761(c).

473.    In purchasing or leasing the Z06s, Plaintiffs and the other California Class members were deceived by GM's failure to disclose that the Z06's "track-proven" powertrain systems are defective as they are not equipped with a transmission cooler and rear differential cooler, leading to overheating of the powertrain system and the Z06s unexpectedly going into Limp Mode—a dangerous scenario that significantly increases the likelihood of collisions both on the race track and on public highways.

474.    GM's conduct, as described hereinabove, was and is in violation of the CLRA. GM's conduct violates at least Cal. Civ. Code § 1770(a)(16) (representing that goods have been supplied in accordance with a previous representation when they have not).

475.    Plaintiffs and the other California Class members have suffered injury in fact and actual damages resulting from GM's material omissions and/or misrepresentations because they paid an inflated purchase or lease price for the Z06s.

010687-11 956296

476.    GM knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the Z06s and that the Z06s were not suitable for their intended use.

477.    The facts concealed and omitted by GM to Plaintiffs and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Z06s or pay a lower price. Had Plaintiffs and the other California Class members known about the defective nature of the Z06s and their inability to operate these Z06s safety on a race track, they would not have purchased or leased the Z06s or would not have paid the prices they paid in fact.

478.    Plaintiffs have provided GM with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). The notice was transmitted to GM on June 9, 2017.

479.    Plaintiffs' and the other California Class members' injuries were proximately caused by GM's fraudulent and deceptive business practices.

480.    Therefore, Plaintiffs and the other California Class members are entitled to equitable relief and will amend this action and seek monetary relief under the CLRA.

## COUNT THIRTY

### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *ET SEQ.*)

481.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

482.    This claim is brought by Plaintiffs on behalf of residents of Colorado who are members of the Class.

483.    The Colorado Consumer Protection Act (Colorado CPA) prohibits deceptive practices in the course of a person's business including, but not limited to, "mak[ing] false or misleading statements of fact concerning the price of goods, services, or property or the reasons

- 107 -

for, existence of, or amounts of price reductions;" and "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

484.    Defendant is a "person" under Colo. Rev. Stat. § 6-1-102(6).

485.    Plaintiffs and Class members are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a).

486.    Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

487.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff or Class member.

488.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the Colorado CPA.

## COUNT THIRTY-ONE

## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A *ET SEQ.*)

489.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

490.    This claim is brought by Plaintiffs on behalf of residents of Connecticut who are members of the Class.

010687-11 956296

491.    The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

492.    Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

493.    Defendant's challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

494.    Plaintiffs and Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

495.    Defendant acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights and safety of others. Therefore, punitive damages are warranted.

## COUNT THIRTY-TWO

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
### (DEL. CODE TIT. 6, § 2513 *ET SEQ.*)

496.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

497.    This claim is brought by Plaintiffs on behalf of residents of Delaware who are members of the Class.

498.    The Delaware Consumer Fraud Act (Delaware CFA) prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale,

lease or advertisement of any merchandise, whether or nor any person has in fact been misled, deceived, or damaged thereby." Del. Code tit. 6, § 2513(a).

499.   Defendant is a "person" within the meaning of Del. Code tit. 6, § 2511(7).

500.   Defendant's actions, as set forth above, occurred in the conduct of trade or commerce.

501.   Plaintiffs seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendant's unlawful conduct. *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1980). Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

502.   Defendant engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

## COUNT THIRTY-THREE

### VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT (GA. CODE ANN. § 10-1-390 *ET SEQ.*)

503.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

504.   This claim is brought by Plaintiffs on behalf of residents of Georgia who are members of the Class.

505.   The Georgia Fair Business Practices Act (Georgia FBPA) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or

services are of a particular standard, quality, or grade … if they are of another," and

"[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

506.    Plaintiffs and Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

507.    Defendant engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b).

508.    Plaintiffs are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a).

509.    Plaintiffs also seek an order enjoining Defendant unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code Ann. § 10-1-399.

510.    On June 9, 2017, Plaintiffs sent a letter complying with Ga. Code Ann. § 10-1-399(b) to Defendant.

## COUNT THIRTY-FOUR

### VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (GA. CODE. ANN. § 10-1-370 *ET SEQ.*)

511.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

512.    This claim is brought by Plaintiffs on behalf of residents of Georgia who are members of the Class.

513.    Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "[m]ak[ing] false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" or "any other conduct

- 111 -

which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

514.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of Ga. Code Ann. § 10-1-371(5).

515.    Plaintiffs seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ga. Code Ann. § 10-1-373.

## COUNT THIRTY-FIVE

### VIOLATION OF THE HAWAII ACT § 480-2(A)
### (HAW. REV. STAT. § 480 *ET SEQ.*)

516.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

517.    This claim is brought by Plaintiffs on behalf of residents of Hawaii who are members of the Class.

518.    Hawaii Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

519.    Defendant is a "person" under Haw. Rev. Stat. § 480-1.

520.    Plaintiffs and Class members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased the vehicle at issue.

521.    Pursuant to Haw. Rev. Stat. § 480-13, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

522.    Under Haw. Rev. Stat. § 480-13.5, Plaintiffs seek an additional award against Defendant of up to $10,000 for each violation directed at a Hawaii elder. Defendant knew or

should have known that its conduct was directed to one or more Plaintiffs who are elders.

Defendant's conduct caused one or more of these elders to suffer a substantial loss of property

set aside for retirement or for personal or family care and maintenance, or assets essential to the

health or welfare of the elder. Plaintiffs who are elders are substantially more vulnerable to

Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted

mobility, or disability, and each of them suffered a substantial physical, emotional, or economic

damage resulting from Defendant's conduct.

**COUNT THIRTY-SIX**

**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CODE ANN. § 48-601 *ET SEQ.*)**

523.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this complaint.

524.    This claim is brought by Plaintiffs on behalf of residents of Idaho who are

members of the Class.

525.    The Idaho Consumer Protection Act (Idaho CPA) prohibits deceptive business

practices, including, but not limited to, "(11) [m]aking false or misleading statements of fact

concerning the reasons for, existence of, or amounts of price reductions;" "(17) [e]ngaging in any

act or practice which is otherwise misleading, false, or deceptive to the consumer;" or

"(18) engaging in any unconscionable method, act or practice in the conduct of trade or

commerce," Idaho Code Ann. § 48-603.

526.    Defendant is a "person" under Idaho Code Ann. § 48-602(1).

527.    Defendant's acts or practices as set forth above occurred in the conduct of "trade"

or "commerce" under Idaho Code Ann. § 48-602(2).

- 113 -

528.    Pursuant to Idaho Code § 48-608, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Plaintiff.

529.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

530.    Plaintiffs also seek punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the safety and reliability of Corvette Z06s, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a dangerous flaw in the Z06s it repeatedly promised Plaintiffs were safe. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT THIRTY-SEVEN

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *ET SEQ.* AND 720 ILCS 295/1A)

531.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

532.    This claim is brought by Plaintiffs on behalf of residents of Illinois who are members of the class.

533.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the

- 114 -

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact . . . in the conduct of trade or

commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815

ILCS 505/2.

534.    Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

535.    Plaintiffs and Illinois Class members are "consumers" as that term is defined in

815 ILCS 505/1(e).

536.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against

Defendant in the amount of actual damages as well as punitive damages because Defendant acted

with fraud and/or malice and/or was grossly negligent.

537.    Plaintiff also seeks an order enjoining Defendant's unfair and/or deceptive acts or

practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1 *et*

*seq.*

## COUNT THIRTY-EIGHT

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (IND. CODE § 24-5-0.5-3)

538.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this complaint.

539.    This claim is brought by Plaintiffs on behalf of residents of Indiana who are

members of the Class.

540.    Indiana's Deceptive Consumer Sales Act (Indiana DCSA) prohibits a person from

engaging in a "deceptive business practice[s]" or acts, including but not limited to

representations that "a specific price advantage exists as to such subject of a consumer

- 115 -

transaction, if it does not and if the supplier knows or should reasonably know that it does not."
Ind. Code § 24-5-0.5-3(b).

541.    Defendant is a "person" within the meaning of Ind. Code § 25-5-0.5-2(a)(2), and a
"supplier" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

542.    Plaintiffs' payments for the Z06s at issue are "consumer transactions" within the
meaning of Ind. Code § 24-5-0.5-2(a)(3).

543.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs seek monetary relief against
Defendant measured as the greater of (a) actual damages in an amount to be determined at trial
and (b) statutory damages in the amount of $500 for each plaintiff, including treble damages up
to $1,000 for Defendant's willfully deceptive acts.

544.    Plaintiffs also seek punitive damages based on the outrageousness and
recklessness of Defendant's conduct.

545.    On June 9, 2017, Plaintiffs sent a letter complying with Ind. Code § 24-5-0.5-5(a)
to Defendant. Should Defendant fail to remedy its unlawful conduct within the requisite period,
Plaintiffs will amend to seek all damages and relief to which they are entitled.

**COUNT THIRTY-NINE**

**VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION
FOR CONSUMER FRAUDS ACT
(IOWA CODE § 714H.1 *ET SEQ.*)**

546.    Plaintiffs hereby incorporate by reference the allegations contained in the
preceding paragraphs of this complaint.

547.    This claim is brought by Plaintiffs on behalf of residents of Iowa who are
members of the Class.

548.    The Iowa Private Right of Action for Consumer Frauds Act (Iowa CFA) prohibits
any "practice or act the person knows or reasonably should know is an unfair practice, deception,

- 116 -

fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or

omission of a material fact, with the intent that others rely upon the unfair practice, deception,

fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission in

connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code

§ 714H.3.

549.    Defendant is a "person" under Iowa Code § 714H.2(7).

550.    Plaintiffs and Class members are "consumers" as defined by Iowa Code

§ 714H.2(3), who purchased the vehicles at issue.

551.    Pursuant to Iowa Code § 714H.5, Plaintiffs seek an order enjoining Defendant's

unfair and/or deceptive acts or practices; actual damages; and statutory damages up to three

times the amount of actual damages awarded as a result of Defendant's willful and wanton

disregard for the rights and safety of others; attorneys' fees; and other such equitable relief as the

court deems necessary to protect the public from further violations of the Iowa CFA.

**COUNT FORTY**

**VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT**
**(KAN. STAT. ANN. § 50-623 *ET SEQ.*)**

552.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this complaint.

553.    This claim is brought by Plaintiffs on behalf of residents of Kansas who are

members of the Class.

554.    The Kansas Consumer Protection Act (Kansas CPA) states "[n]o supplier shall

engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat.

Ann. § 50-626(a). Deceptive acts or practices include, but are not limited to, "the willful use, in

any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a

- 117 -

material fact;" "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;" "making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions," "whether or not any consumer has in fact been misled." Kan. Stat. Ann. § 50-626.

555.   Plaintiffs and Class members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased the vehicles at issue.

556.   Each sale of the Corvette Z06 to Plaintiffs was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

557.   Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each plaintiff.

558.   Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623 *et seq.*

**COUNT FORTY-ONE**

**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
(KY. REV. STAT. ANN. § 367.110 *ET SEQ.*)**

559.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

560.   This claim is brought by Plaintiffs on behalf of residents of Kentucky who are members of the Class.

561.   The Kentucky Consumer Protection Act (Kentucky CPA) makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Ky. Rev. Stat. Ann. § 367.170(1).

562.     Defendant, Plaintiffs, and Class members are "persons" within the meaning of Ky. Rev. Stat. Ann. § 367.110(1).

563.     Defendant engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110(2).

564.     Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs seek to recover actual damages in an amount to be determined at trial; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT FORTY-TWO

### VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. REV. STAT. ANN. § 51:1401 *ET SEQ.*)

565.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

566.     This claim is brought by Plaintiffs on behalf of residents of Louisiana who are members of the Class.

567.     The Louisiana Unfair Trade Practices and Consumer Protection Law (Louisiana CPL) makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A).

568.     Defendant, Plaintiffs, and Class members are "persons" within the meaning of La. Rev. Stat. Ann. § 51:1402(8).

569.     Plaintiffs and Class members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

570.     Defendant engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(9).

571.    Pursuant to La. Rev. Stat. Ann. § 51:1409, Plaintiffs seek to recover actual damages in an amount to be determined at trial; treble damages for knowing violations of the Louisiana CPL; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. Ann. § 51:1409.

## COUNT FORTY-THREE

### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
### (ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)

572.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

573.    This claim is brought by Plaintiffs on behalf of residents of Maine who are members of the Class.

574.    The Maine Unfair Trade Practices Act (Maine UTPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Me. Rev. Stat. Ann. tit. 5, § 207.

575.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(2).

576.    Defendant is engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(3).

577.    Pursuant to Me. Rev. Stat. Ann. tit. 5, § 213, Plaintiffs seek an order enjoining Defendant's unfair and/or deceptive acts or practices.

578.    On June 9, 2017, Plaintiffs sent a letter complying with Me. Rev. Stat. Ann. tit. 5, § 213(1-A) to Defendant. Should Defendant fail to remedy its unlawful conduct within the requisite period, Plaintiffs will amend to seek all damages and relief to which they are entitled.

## COUNT FORTY-FOUR

### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE, COM. LAW § 13-101 *ET SEQ.*)

579.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

580.    This claim is brought by Plaintiffs on behalf of residents of Maryland who are members of the Class.

581.    The Maryland Consumer Protection Act (Maryland CPA) provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive;" "false or misleading representation[s] of fact which concern[] . . . [t]he reason of or the existence or amount of a price reduction;" and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," Md. Code, Com. Law § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code, Com. Law § 13-302.

582.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of Md. Code, Com. Law § 13-101(h).

583.    Pursuant to Md. Code, Com. Law § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT FORTY-FIVE

### VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A)
### (MASS. GEN. LAWS CH. 93A, § 1 *ET SEQ.*)

584.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

- 121 -

585.    On June 9, 2017, Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3) to Defendant. Plaintiffs seek all damages and relief to which they are entitled.

586.    This claim is brought by Plaintiffs on behalf of residents of Massachusetts who are members of the Class.

587.    Massachusetts law (the Massachusetts Act) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

588.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

589.    Defendant engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

590.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs will seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each plaintiff. Because Defendant's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each plaintiff, up to three times actual damages, but no less than two times actual damages.

591.    Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

## COUNT FORTY-SIX

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903 *ET SEQ.*)

592.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

010687-11 956296

593.     This claim is brought by Plaintiffs on behalf of residents of Michigan who are members of the Class.

594.     The Michigan Consumer Protection Act (Michigan CPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "charging the consumer a price that is grossly in excess of the price at which similar property or services are sold;" "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

595.     Plaintiffs and Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

596.     Defendant is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

597.     Plaintiffs seek injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

598.     Plaintiffs also seek punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others,

subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the safety and reliability of Corvette Z06s, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a dangerous flaw in the Z06s it repeatedly promised Plaintiffs were safe. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT FORTY-SEVEN

## VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68 *ET SEQ.*)

599.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

600.    This claim is brought by Plaintiffs on behalf of residents of Minnesota who are members of the Class.

601.    The Minnesota Prevention of Consumer Fraud Act (Minnesota CFA) prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1).

602.    Each purchase of the Z06 constitutes "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

603.    Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

- 124 -

604.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendant's acts show deliberate disregard for the rights or safety of others.

### COUNT FORTY-EIGHT

### VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48 *ET SEQ.*)

605.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

606.    This claim is brought by Plaintiffs on behalf of residents of Minnesota who are members of the Class.

607.    The Minnesota Deceptive Trade Practices Act (Minnesota DTPA) prohibits deceptive trade practices, which occur when a person "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." MINN. STAT. § 325D.44.

608.    Pursuant to MINN. STAT. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

609.    Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Defendant's acts show deliberate disregard for the rights or safety of others.

### COUNT FORTY-NINE

### VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT (MISS. CODE. ANN. § 75-24-1 *ET SEQ.*)

610.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

- 125 -

611.    This claim is brought by Plaintiffs on behalf of residents of Mississippi who are members of the Class.

612.    The Mississippi Consumer Protection Act (Mississippi CPA) prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "[m]isrepresentations of fact concerning the reasons for, existence of, or amounts of price reductions." Miss. Code Ann. § 75-24-5(2).

613.    Plaintiffs seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## COUNT FIFTY

### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (MO. REV. STAT. § 407.010 *ET SEQ.*)

614.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

615.    This claim is brought by Plaintiffs on behalf of residents of Missouri who are members of the Class.

616.    The Missouri Merchandising Practices Act (Missouri MPA) makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

617.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

618.    Defendant engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

619.     Defendant is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT FIFTY-ONE

### VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. § 30-14-101 *ET SEQ.*)

620.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

621.     This claim is brought by Plaintiffs on behalf of residents of Montana who are members of the Class.

622.     The Montana Unfair Trade Practices and Consumer Protection Act (Montana CPA) makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103.

623.     Defendant, Plaintiffs, and Class members are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

624.     Plaintiffs and Class members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

625.     The sale of each vehicle at issue occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Defendant committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

626.     Because Defendant's unlawful methods, acts, and practices have caused Plaintiffs to suffer an ascertainable loss of money and property, Plaintiffs seek from Defendant: the greater of actual damages or $500; discretionary treble damages; reasonable attorneys' fees.

- 127 -

627.    Plaintiffs additionally seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

## COUNT FIFTY-TWO

### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT. § 59-1601 *ET SEQ.*)

628.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

629.    This claim is brought by Plaintiffs on behalf of residents of Nebraska who are members of the Class.

630.    The Nebraska Consumer Protection Act (Nebraska CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602.

631.    Defendant, Plaintiffs, and Class members are "person[s]" under Neb. Rev. Stat. § 59-1601(1).

632.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

633.    Because Defendant's conduct caused injury to Plaintiffs' property through violations of the Nebraska CPA, Plaintiffs seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Defendant's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

**COUNT FIFTY-THREE**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(NEV. REV. STAT. § 598.0903 *ET SEQ.*)**

634.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

635.    This claim is brought by Plaintiffs on behalf of residents of Nevada who are members of the Class.

636.    The Nevada Deceptive Trade Practices Act (Nevada DTPA) prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "[m]akes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions;" "[k]nowingly makes any other false representation in a transaction;" "[f]ails to disclose a material fact in connection with the sale or lease of goods or services;" or "[m]akes an assertion of scientific, clinical or quantifiable fact in an advertisement which would cause a reasonable person to believe that the assertion is true, unless, at the time the assertion is made, the person making it has possession of factually objective scientific, clinical or quantifiable evidence which substantiates the assertion." Nev. Rev. Stat. §§ 598.0915–598.0925.

637.    Accordingly, Plaintiffs seek their actual damages, punitive damages, an order enjoining Defendant's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA. Nev. Rev. Stat. § 41.600.

**COUNT FIFTY-FOUR**

**VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
(N.H. REV. STAT. ANN. § 358-A:1 *ET SEQ.*)**

638.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this complaint.

639.    This claim is brought by Plaintiffs on behalf of residents of New Hampshire who

are members of the Class.

640.    The New Hampshire Consumer Protection Act (New Hampshire CPA) prohibits a

person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or

practice," including, "but . . . not limited to" "[m]aking false or misleading statements of fact

concerning the reasons for, existence of, or amounts of price reductions." N.H. Rev. Stat. Ann.

§ 358-A:2.

641.    Defendant, Plaintiffs, and Class members are "persons" under N.H. Rev. Stat.

Ann. § 358-A:1.

642.    Defendant's actions as set forth herein occurred in the conduct of trade or

commerce as defined under N.H. Rev. Stat. Ann. § 358-A:1.

643.    Because Defendant's willful conduct caused injury to Plaintiffs' property through

violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000,

whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining

Defendant's unfair and/or deceptive acts and practices; and any other just and proper relief under

N.H. Rev. Stat. Ann. § 358-A:10.

010687-11 956296

## COUNT FIFTY-FIVE

## VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)

644.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

645.    This claim is brought by Plaintiffs on behalf of residents of New Mexico who are members of the Class.

646.    The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including, but not limited to, "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).

647.    Defendant, Plaintiffs, and Class members are "person[s]" under N.M. Stat. Ann. § 57-12-2.

648.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

649.    Because Defendant's unconscionable, willful conduct caused actual harm to Plaintiffs, Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

## COUNT FIFTY-SIX

**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW §§ 349-350
(N.Y. GEN. BUS. LAW §§ 349-350)**

650.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

651.    This claim is brought by Plaintiffs on behalf of residents of New York who are members of the Class.

652.    The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

653.    Plaintiffs and Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

654.    Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

655.    Defendant's deceptive acts and practices, which were intended to mislead consumers who purchased the Z06, was conduct directed at consumers.

656.    Because Defendant's willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Defendant's deceptive conduct; and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

- 132 -

## COUNT FIFTY-SEVEN

### VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT
### (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)

657.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

658.    This claim is brought by Plaintiffs on behalf of residents of North Carolina who are members of the Class.

659.    North Carolina's Unfair and Deceptive Acts and Practices Act (the North Carolina Act) broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

660.    Defendant engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

661.    Plaintiffs seek an order for treble their actual damages, an order enjoining Defendant's unlawful acts, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

## COUNT FIFTY-EIGHT

### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-02)

662.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

663.    This claim is brought by Plaintiffs on behalf of residents of North Dakota who are members of the Class.

664.    The North Dakota Consumer Fraud Act (North Dakota CFA) makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false

- 133 -

pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise . . . ." N.D. Cent. Code § 51-15-02.

665.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

666.    Defendant's engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

667.    Defendant knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Defendant is liable to Plaintiffs for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiffs further seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

**COUNT FIFTY-NINE**

**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
(OHIO REV. CODE ANN. § 1345.01 *ET SEQ.*)**

668.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

669.    This claim is brought by Plaintiffs on behalf of residents of Ohio who are members of the Class.

670.    Ohio Consumer Sales Practices Act (Ohio CSPA), Ohio Rev. Code Ann. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing that "a specific price advantage exists, if it does not." Ohio Rev. Code Ann. § 1345.02.

671.    Defendant is a "supplier" as that term is defined in Ohio Rev. Code Ann. § 1345.01(C).

672.    Plaintiffs and Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchases of Z06 is a "consumer transaction" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

673.    As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendant's deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees, pursuant to Ohio Rev. Code Ann. § 1345.09 *et seq.*

**COUNT SIXTY**

**VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
(OKLA. STAT. TIT. 15, § 751 *ET SEQ.*)**

674.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

675.    This claim is brought by Plaintiffs on behalf of residents of Oklahoma who are members of the Class.

676.    The Oklahoma Consumer Protection Act (Oklahoma CPA) declares unlawful, *inter alia*, the following acts or practices when committed in the course of business: making a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person;" "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;" and making "false or misleading statements of fact,

knowingly or with reason to know, concerning the price of the subject of a consumer transaction or the reason for, existence of, or amounts of price reduction." Okla. Stat. tit. 15, §§ 752-753.

677.    Plaintiffs and Class members are "persons" under Okla. Stat. tit. 15, § 752.

678.    Defendant is a "person," "corporation," or "association" within the meaning of Okla. Stat. tit. 15, § 15-751(1).

679.    The sale of the Z06 to Plaintiffs was a "consumer transaction" within the meaning of Okla. Stat. tit. 15, § 752, and Defendant's actions as set forth herein occurred in the conduct of trade or commerce.

680.    Plaintiffs also seek punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the safety and reliability of Corvette Z06s, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a dangerous flaw in the Z06s it repeatedly promised Plaintiffs were safe. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

681.    Defendant's conduct as alleged herein was unconscionable because (1) Defendant, knowingly or had reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transaction was entered into, Defendant knew or had reason to know that price the consumers were charged grossly exceeded the price at which similar products were readily obtainable in similar transactions by like consumers; and (3) Defendant knew or had reason to

010687-11 956296

know that the transaction Defendant induced the consumers to enter into was excessively one-sided in favor of Defendant.

682.    Because Defendant's unconscionable conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees, under Okla. Stat. tit. 15, § 761.1. Plaintiffs further seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

**COUNT SIXTY-ONE**

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**
**(OR. REV. STAT. § 646.605 *ET SEQ.*)**

683.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

684.    This claim is brought by Plaintiffs on behalf of residents of Oregon who are members of the Class.

685.    The Oregon Unfair Trade Practices Act (Oregon UTPA) prohibits a person from, in the course of the person's business, doing any of the following: "[m]ak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions;" "[m]ak[ing] false or misleading representations of fact concerning the offering price or, or the person's cost for . . . goods;" or "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1).

686.    Defendant is a person within the meaning of Or. Rev. Stat. § 646.605(4).

687.    Each Corvette Z06 at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

688.    Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). Plaintiffs are also entitled to punitive damages because Defendant engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

**COUNT SIXTY-TWO**

**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT
(R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)**

689.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

690.    This claim is brought by Plaintiffs on behalf of residents of Rhode Island who are members of the Class.

691.    Rhode Island's Unfair Trade Practices and Consumer Protection Act (Rhode Island CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;" "[e]ngaging in any act or practice that is unfair or deceptive to the consumer;" and "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6).

692.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

693.    Defendant were engaged in "trade" and "commerce" within the meaning of R.I. Gen. Laws § 6-13.1-1(5).

694.    Plaintiffs purchased the Z06s primarily for personal, family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

- 138 -

695.    Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). Plaintiffs also seek punitive damages at the discretion of the Court.

## COUNT SIXTY-THREE

### VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
(S.C. CODE ANN. § 39-5-10 *ET SEQ.*)

696.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

697.    This claim is brought by Plaintiffs on behalf of residents of South Carolina who are members of the Class.

698.    The South Carolina Unfair Trade Practices Act (South Carolina UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20(a).

699.    Defendant is a "person" under S.C. Code Ann. § 39-5-10.

700.    Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiffs seek monetary relief to recover their economic losses. Because Defendant's actions were willful and knowing, Plaintiffs' damages should be trebled.

701.    Plaintiffs also seek punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the safety and reliability of Corvette Z06s, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a dangerous flaw in the Z06s it repeatedly promised Plaintiffs

- 139 -

were safe. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

702.     Plaintiffs further seek an order enjoining Defendant's unfair or deceptive acts or practices.

## COUNT SIXTY-FOUR

### VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-6)

703.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

704.     This claim is brought by Plaintiffs on behalf of residents of South Dakota who are members of the Class.

705.     The South Dakota Deceptive Trade Practices and Consumer Protection Law (South Dakota CPL) prohibits deceptive acts or practices, which include "[k]nowingly act[ing], us[ing], or employ[ing] any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby;" and "advertising price reductions without . . . including in the advertisement the specific basis for the claim of a price reduction or [o]ffering the merchandise for sale at the higher price from which the reduction is taken for at least seven consecutive business days during the sixty-day period prior to the advertisement." S.D. Codified Laws §§ 37-24-6(1), 37-24-31.

706.     Under S.D. Codified Laws § 37-24-31, Plaintiffs are entitled to a recovery of their actual damages suffered as a result of Defendant's acts and practices.

## COUNT SIXTY-FIVE

### VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
### (TENN. CODE ANN. § 47-18-101 *ET SEQ.*)

707.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

708.    This claim is brought by Plaintiffs on behalf of residents of Tennessee who are members of the class.

709.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Tenn. Code Ann. § 47-18-104.

710.    Plaintiffs and Tennessee Class members are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

711.    Defendant is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

712.    Defendant's conduct complained of herein affected "trade," "commerce," or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

713.    Pursuant to Tenn. Code Ann. § 47-18-109(a), Plaintiff seeks monetary relief against Defendant measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendant's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

## COUNT SIXTY-SIX

### VIOLATION OF THE UTAH CONSUMER SALE PRACTICES ACT
### (UTAH CODE ANN. § 13-11-1 *ET SEQ.*)

714.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

- 141 -

715.    This claim is brought by Plaintiffs on behalf of residents of Utah who are members of the Class.

716.    The Utah Consumer Sales Practices Act (Utah CSPA) makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including, but not limited to, "indicat[ing] that a specific price advantage exists, if it does not." Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

717.    Defendant knew, or had reason to know, that consumers would rely on GM's representations about Z06s being "track-proven" and marketed the Z06s as such, thereby commanding a higher price due to such representations. GM also knew the omissions about the Z06s entering Limp Mode under both race track conditions and normal driving conditions would negatively impact the price and, as such, chose not to disclose this information to consumers. GM therefore engaged in an unconscionable act within the meaning of Utah Code Ann. § 13-11-5.

718.    Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff; reasonable attorneys' fees; and any other just and proper relief available under the Utah CSPA.

## COUNT SIXTY-SEVEN

### VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)

719.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

010687-11 956296

720.    This claim is brought by Plaintiffs on behalf of residents of Vermont who are members of the Class.

721.    The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce . . . ." Vt. Stat. Ann. tit. 9, § 2453(a).

722.    Defendant were sellers within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

723.    Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT SIXTY-EIGHT

### VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. § 59.1-196 *ET SEQ.*)

724.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

725.    This claim is brought by Plaintiffs on behalf of residents of Virginia who are members of the Class.

726.    The Virginia Consumer Protection Act (Virginia CPA) lists prohibited "practices" which include: "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200.

727.    Defendant is a "supplier" under Va. Code Ann. § 59.1-198.

728.    Defendant's advertisement of the Corvette Z06 was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

729.    Pursuant to Va. Code Ann. § 59.1-204, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff. Because Defendant's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each plaintiff, the greater of (a) three times actual damages or (b) $1,000.

730.    Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under Va. Code Ann. § 59.1-204 *et seq.*

## COUNT SIXTY-NINE

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*)

731.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

732.    This claim is brought by Plaintiffs on behalf of residents of Washington who are members of the Class.

733.    The Washington Consumer Protection Act (Washington CPA) broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010.

734.    Defendant committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code Ann. § 19.96.010.

- 144 -

735.    Defendant is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

### COUNT SEVENTY

### VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT (WIS. STAT. § 110.18)

736.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

737.    This claim is brought by Plaintiffs on behalf of residents of Wisconsin who are members of the Class.

738.    The Wisconsin Deceptive Trade Practices Act (Wisconsin DTPA) prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

739.    Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

740.    Plaintiffs and Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1). Plaintiffs purchased the Corvette Z06.

741.    Plaintiffs are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because Defendant's conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

742.    Plaintiffs also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

- 145 -

**COUNT SEVENTY-ONE**

**VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT
(WYO. STAT. § 40-12-105 *ET SEQ.*)**

743.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

744.    This claim is brought by Plaintiffs on behalf of residents of Wyoming who are members of the Class.

745.    Pursuant to Wyo. Stat. § 40-12-108(a), Plaintiffs seek monetary relief against the Defendant measured as actual damages in an amount to be determined at trial, in addition to any other just and proper relief available under the Wyoming CPA.

746.    On June 9, 2017, Plaintiffs sent a letter complying with Wyo. Stat. § 45-12-109 to Defendant. Should Defendant fail to remedy its unlawful conduct within the requisite period, Plaintiffs will amend to seek all damages and relief to which they are entitled.

747.    Pursuant to applicable state statutes, Plaintiffs will mail a copy of this action to the Attorney General's office for the states of Connecticut, Illinois, Louisiana, Missouri, New Jersey, Oregon, Texas, Utah, and Washington.

**X.    UNJUST ENRICHMENT CLAIMS**

**COUNT SEVENTY-TWO**

**UNJUST ENRICHMENT
(BASED ON ALABAMA LAW)**

748.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

749.    This claim is brought by Plaintiffs on behalf of residents of Alabama who are members of the Class.

- 146 -

750.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

751.     GM has voluntarily accepted and retained this benefit.

752.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

753.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**COUNT SEVENTY-THREE**

**UNJUST ENRICHMENT**
**(BASED ON ALASKA LAW)**

754.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

755.     This claim is brought by Plaintiffs on behalf of residents of Alaska who are members of the Class.

756.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

757.     GM has voluntarily accepted and retained this benefit.

758.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

759.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT SEVENTY-FOUR

### UNJUST ENRICHMENT
### (BASED ON ARIZONA LAW)

760.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

761.    This claim is brought by Plaintiffs on behalf of residents of Arizona who are members of the Class.

762.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

763.    GM has voluntarily accepted and retained this benefit.

764.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

765.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT SEVENTY-FIVE

### UNJUST ENRICHMENT
### (BASED ON ARKANSAS LAW)

766.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

767.    This claim is brought by Plaintiffs on behalf of residents of Arkansas who are members of the Class.

768.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

769.    GM has voluntarily accepted and retained this benefit.

770.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

771.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT SEVENTY-SIX

### UNJUST ENRICHMENT
### (BASED ON CALIFORNIA LAW)

772.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

773.    This claim is brought by Plaintiffs on behalf of residents of California who are members of the Class.

- 149 -

774. GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

775. GM has voluntarily accepted and retained this benefit.

776. The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

777. Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT SEVENTY-SEVEN

### UNJUST ENRICHMENT
### (BASED ON COLORADO LAW)

778. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

779. This claim is brought by Plaintiffs on behalf of residents of Colorado who are members of the Class.

780. GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

781. GM has voluntarily accepted and retained this benefit.

- 150 -

782.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

783.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**COUNT SEVENTY-EIGHT**

**UNJUST ENRICHMENT**
**(BASED ON CONNECTICUT LAW)**

784.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

785.     This claim is brought by Plaintiffs on behalf of residents of Connecticut who are members of the Class.

786.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

787.     GM has voluntarily accepted and retained this benefit.

788.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

789.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

010687-11 956296

## COUNT SEVENTY-NINE

### UNJUST ENRICHMENT
### (BASED ON DELAWARE LAW)

790.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

791.    This claim is brought by Plaintiffs on behalf of residents of Delaware who are members of the Class.

792.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

793.    GM has voluntarily accepted and retained this benefit.

794.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

795.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT EIGHTY

### UNJUST ENRICHMENT
### (BASED ON GEORGIA LAW)

796.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

797.    This claim is brought by Plaintiffs on behalf of residents of Georgia who are members of the Class.

- 152 -

798.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

799.    GM has voluntarily accepted and retained this benefit.

800.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

801.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT EIGHTY-ONE

### UNJUST ENRICHMENT
### (BASED ON HAWAII LAW)

802.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

803.    This claim is brought by Plaintiffs on behalf of residents of Hawaii who are members of the Class.

804.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

805.    GM has voluntarily accepted and retained this benefit.

806.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

807.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**COUNT EIGHTY-TWO**

**UNJUST ENRICHMENT**
**(BASED ON IDAHO LAW)**

808.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

809.    This claim is brought by Plaintiffs on behalf of residents of Idaho who are members of the Class.

810.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

811.    GM has voluntarily accepted and retained this benefit.

812.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

813.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

010687-11 956296

## COUNT EIGHTY-THREE

### UNJUST ENRICHMENT
### (BASED ON ILLINOIS LAW)

814.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

815.    This claim is brought by Plaintiffs on behalf of residents of Illinois who are members of the Class.

816.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

817.    GM has voluntarily accepted and retained this benefit.

818.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

819.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT EIGHTY-FOUR

### UNJUST ENRICHMENT
### (BASED ON INDIANA LAW)

820.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

821.    This claim is brought by Plaintiffs on behalf of residents of Indiana who are members of the Class.

- 155 -

822.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

823.   GM has voluntarily accepted and retained this benefit.

824.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

825.   Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

### COUNT EIGHTY-FIVE

### UNJUST ENRICHMENT
### (BASED ON IOWA LAW)

826.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

827.   This claim is brought by Plaintiffs on behalf of residents of Iowa who are members of the Class.

828.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

829.   GM has voluntarily accepted and retained this benefit.

830.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

831.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT EIGHTY-SIX

### UNJUST ENRICHMENT
### (BASED ON KANSAS LAW)

832.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

833.    This claim is brought by Plaintiffs on behalf of residents of Kansas who are members of the Class.

834.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

835.    GM has voluntarily accepted and retained this benefit.

836.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

837.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

010687-11 956296

**COUNT EIGHTY-SEVEN**

**UNJUST ENRICHMENT**
**(BASED ON KENTUCKY LAW)**

838.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

839.    This claim is brought by Plaintiffs on behalf of residents of Kentucky who are members of the Class.

840.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

841.    GM has voluntarily accepted and retained this benefit.

842.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

843.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**COUNT EIGHTY-EIGHT**

**UNJUST ENRICHMENT**
**(BASED ON LOUISIANA LAW)**

844.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

845.    This claim is brought by Plaintiffs on behalf of residents of Louisiana who are members of the Class.

- 158 -

846.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

847.    GM has voluntarily accepted and retained this benefit.

848.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

849.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**COUNT EIGHTY-NINE**

**UNJUST ENRICHMENT**
**(BASED ON MAINE LAW)**

850.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

851.    This claim is brought by Plaintiffs on behalf of residents of Maine who are members of the Class.

852.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

853.    GM has voluntarily accepted and retained this benefit.

010687-11 956296

854. The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

855. Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

COUNT NINETY

UNJUST ENRICHMENT<br>(BASED ON MARYLAND LAW)

856. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

857. This claim is brought by Plaintiffs on behalf of residents of Maryland who are members of the Class.

858. GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

859. GM has voluntarily accepted and retained this benefit.

860. The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

861. Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

### COUNT NINETY-ONE

### UNJUST ENRICHMENT
### (BASED ON MASSACHUSETTS LAW)

862.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

863.    This claim is brought by Plaintiffs on behalf of residents of Massachusetts who are members of the Class.

864.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

865.    GM has voluntarily accepted and retained this benefit.

866.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

867.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

### COUNT NINETY-TWO

### UNJUST ENRICHMENT
### (BASED ON MICHIGAN LAW)

868.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

869.    This claim is brought by Plaintiffs on behalf of residents of Michigan who are members of the Class.

870.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

871.    GM has voluntarily accepted and retained this benefit.

872.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

873.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**COUNT NINETY-THREE**

**UNJUST ENRICHMENT**
**(BASED ON MINNESOTA LAW)**

874.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

875.    This claim is brought by Plaintiffs on behalf of residents of Minnesota who are members of the Class.

876.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

877.    GM has voluntarily accepted and retained this benefit.

010687-11 956296

878.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

879.   Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT NINETY-FOUR

### UNJUST ENRICHMENT
### (BASED ON MISSISSIPPI LAW)

880.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

881.   This claim is brought by Plaintiffs on behalf of residents of Mississippi who are members of the Class.

882.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

883.   GM has voluntarily accepted and retained this benefit.

884.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

885.   Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

010687-11 956296

## COUNT NINETY-FIVE

### UNJUST ENRICHMENT
### (BASED ON MISSOURI LAW)

886.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

887.    This claim is brought by Plaintiffs on behalf of residents of Missouri who are members of the Class.

888.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

889.    GM has voluntarily accepted and retained this benefit.

890.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

891.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT NINETY-SIX

### UNJUST ENRICHMENT
### (BASED ON MONTANA LAW)

892.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

893.    This claim is brought by Plaintiffs on behalf of residents of Montana who are members of the Class.

894.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

895.     GM has voluntarily accepted and retained this benefit.

896.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

897.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT NINETY-SEVEN

### UNJUST ENRICHMENT
### (BASED ON NEBRASKA LAW)

898.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

899.     This claim is brought by Plaintiffs on behalf of residents of Nebraska who are members of the Class.

900.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

901.     GM has voluntarily accepted and retained this benefit.

902.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

903.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT NINETY-EIGHT

### UNJUST ENRICHMENT
### (BASED ON NEVADA LAW)

904.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

905.    This claim is brought by Plaintiffs on behalf of residents of Nevada who are members of the Class.

906.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

907.    GM has voluntarily accepted and retained this benefit.

908.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

909.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

010687-11 956296

## COUNT NINETY-NINE

### UNJUST ENRICHMENT
### (BASED ON NEW HAMPSHIRE LAW)

910.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

911.    This claim is brought by Plaintiffs on behalf of residents of Nevada who are members of the Class.

912.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

913.    GM has voluntarily accepted and retained this benefit.

914.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

915.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED

### UNJUST ENRICHMENT
### (BASED ON NEW MEXICO LAW)

916.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

917.    This claim is brought by Plaintiffs on behalf of residents of New Mexico who are members of the Class.

918.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

919.     GM has voluntarily accepted and retained this benefit.

920.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

921.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

### COUNT ONE HUNDRED ONE

### UNJUST ENRICHMENT
### (BASED ON NEW YORK LAW)

922.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

923.     This claim is brought by Plaintiffs on behalf of residents of New York who are members of the Class.

924.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

925.     GM has voluntarily accepted and retained this benefit.

010687-11 956296

926.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

927.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED TWO

### UNJUST ENRICHMENT
### (BASED ON NORTH CAROLINA LAW)

928.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

929.    This claim is brought by Plaintiffs on behalf of residents of North Carolina who are members of the Class.

930.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

931.    GM has voluntarily accepted and retained this benefit.

932.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

933.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

- 169 -

## COUNT ONE HUNDRED THREE

### UNJUST ENRICHMENT
### (BASED ON NORTH DAKOTA LAW)

934.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

935.    This claim is brought by Plaintiffs on behalf of residents of North Dakota who are members of the Class.

936.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

937.    GM has voluntarily accepted and retained this benefit.

938.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

939.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED FOUR

### UNJUST ENRICHMENT
### (BASED ON OHIO LAW)

940.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

941.    This claim is brought by Plaintiffs on behalf of residents of Ohio who are members of the Class.

- 170 -

942.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

943.   GM has voluntarily accepted and retained this benefit.

944.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

945.   Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

### COUNT ONE HUNDRED FIVE

### UNJUST ENRICHMENT
### (BASED ON OKLAHOMA LAW)

946.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

947.   This claim is brought by Plaintiffs on behalf of residents of Oklahoma who are members of the Class.

948.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

949.   GM has voluntarily accepted and retained this benefit.

- 171 -

950.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

951.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED SIX

### UNJUST ENRICHMENT
### (BASED ON OREGON LAW)

952.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

953.     This claim is brought by Plaintiffs on behalf of residents of Oregon who are members of the Class.

954.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

955.     GM has voluntarily accepted and retained this benefit.

956.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

957.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED SEVEN

### UNJUST ENRICHMENT
### (BASED ON RHODE ISLAND LAW)

958.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

959.    This claim is brought by Plaintiffs on behalf of residents of Rhode Island who are members of the Class.

960.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

961.    GM has voluntarily accepted and retained this benefit.

962.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

963.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED EIGHT

### UNJUST ENRICHMENT
### (BASED ON SOUTH CAROLINA LAW)

964.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

965.    This claim is brought by Plaintiffs on behalf of residents of South Carolina who are members of the Class.

966.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

967.    GM has voluntarily accepted and retained this benefit.

968.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

969.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED NINE

### UNJUST ENRICHMENT
### (BASED ON SOUTH DAKOTA LAW)

970.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

971.    This claim is brought by Plaintiffs on behalf of residents of South Dakota who are members of the Class.

972.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

973.    GM has voluntarily accepted and retained this benefit.

- 174 -

974.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

975.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED TEN

### UNJUST ENRICHMENT
### (BASED ON TENNESSEE LAW)

976.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

977.    This claim is brought by Plaintiffs on behalf of residents of Tennessee who are members of the Class.

978.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

979.    GM has voluntarily accepted and retained this benefit.

980.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

981.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

- 175 -

## COUNT ONE HUNDRED ELEVEN

### UNJUST ENRICHMENT
### (BASED ON UTAH LAW)

982.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

983.    This claim is brought by Plaintiffs on behalf of residents of Utah who are members of the Class.

984.    GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

985.    GM has voluntarily accepted and retained this benefit.

986.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

987.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED TWELVE

### UNJUST ENRICHMENT
### (BASED ON VERMONT LAW)

988.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

989.    This claim is brought by Plaintiffs on behalf of residents of Vermont who are members of the Class.

- 176 -

990.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

991.     GM has voluntarily accepted and retained this benefit.

992.     The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

993.     Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED THIRTEEN

### UNJUST ENRICHMENT
### (BASED ON VIRGINIA LAW)

994.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

995.     This claim is brought by Plaintiffs on behalf of residents of Virginia who are members of the Class.

996.     GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

997.     GM has voluntarily accepted and retained this benefit.

010687-11 956296

998.    The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

999.    Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED FOURTEEN

### UNJUST ENRICHMENT
### (BASED ON WASHINGTON LAW)

1000.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1001.   This claim is brought by Plaintiffs on behalf of residents of Washington who are members of the Class.

1002.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

1003.   GM has voluntarily accepted and retained this benefit.

1004.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

1005.   Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

010687-11 956296

## COUNT ONE HUNDRED FIFTEEN

### UNJUST ENRICHMENT
### (BASED ON WISCONSIN LAW)

1006.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1007.   This claim is brought by Plaintiffs on behalf of residents of Wisconsin who are members of the Class.

1008.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

1009.   GM has voluntarily accepted and retained this benefit.

1010.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

1011.   Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT ONE HUNDRED SIXTEEN

### UNJUST ENRICHMENT
### (BASED ON WYOMING LAW)

1012.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1013.   This claim is brought by Plaintiffs on behalf of residents of Wyoming who are members of the Class.

- 179 -

1014.   GM has benefitted and been enriched by the conduct alleged herein. GM has generated substantial revenue from the unlawful conduct described herein. GM has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Class members.

1015.   GM has voluntarily accepted and retained this benefit.

1016.   The circumstances, as described herein, are such that it would be inequitable for GM to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Class members.

1017.   Plaintiffs and the other Class members are entitled to the amount of GM's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## XI.   EXPRESS WARRANTY CLAIMS

### COUNT ONE HUNDRED SEVENTEEN

### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES (CAL. CIV. CODE §§ 1791.2 & 1793.2(D))

1018.   Plaintiffs Vazquez, Malone, White, Nakel, Blanks, and Hamid ("Plaintiffs" for purposes of this Claim) incorporate by reference all preceding allegations as though fully set forth herein.

1019.   This claim is brought by Plaintiffs on behalf of residents of California who are members of the Class.

1020.   Plaintiffs and the other Class members who purchased or leased the Z06s in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b) and "lessees" within the meaning of Cal. Civ. Code § 1791(g).

1021.   The Z06s are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

1022.   GM is a "manufacturer" of the Z06s within the meaning of Cal. Civ. Code § 1791(j).

1023.   Plaintiffs and the other Class members bought or leased new motor vehicles manufactured by GM.

1024.   GM made express warranties to Plaintiffs and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

1025.   In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Z06s Warranty Guides:

> Under your New Vehicle Limited Warranty if:
>
> -your GM vehicle is properly operated and maintained, and
>
> -was taken to a GM dealership for a warranted repair during the warranty period,
>
> then authorized General Motors dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.

1026.   As set forth above in detail, the Z06s are inherently defective in that there are defects in the Z06's "track-proven" powertrain systems as they are not equipped with a transmission cooler and rear differential cooler, leading to overheating of the powertrain system, damage to other systems within the vehicle, and vehicles unexpectedly going into Limp Mode—a dangerous scenario that significantly increases the likelihood of collisions both on the race track and on public highways. These defects were and continue to be covered by GM's express warranties, and these defects substantially impair the use, value, and safety of GM's Z06s to reasonable consumers like Plaintiffs and the other Class members.

1027.   Plaintiffs notified GM and/or its agents of the need for repairs prior to starting this lawsuit.

1028.   GM did not promptly replace or buy back the Z06s of Plaintiffs and the other Class members.

1029.   As a result of GM's breach of its express warranties, Plaintiffs and the other Class members received goods whose dangerous condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of GM's products, the products' malfunctioning, and the nonuse of their Z06s.

1030.   Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Z06s or the overpayment or diminution in value of their Z06s.

1031.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide and State Classes, respectfully request that the Court enter judgment in their favor and against General Motors, as follows:

A.      Certification of the proposed Nationwide Class and State Law Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining General Motors from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement program;

D.      Injunctive relief in the form of a buy back;

- 182 -

E.      Costs, restitution, damages, including punitive damages, and disgorgement in an

amount to be determined at trial;

F.      An order requiring General Motors to pay both pre- and post-judgment interest on

any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for all claims so triable.


Dated: June 13, 2017                   GROSSMAN ROTH YAFFA COHEN

                                       By: */s/ Stuart Z. Grossman*
                                             Stuart Z. Grossman
                                       Rachel Furst
                                       2525 Ponce de Leon, Suite 1150
                                       Coral Gables, FL 33134
                                       Telephone: (888) 296-1681
                                       Facsimile: (305) 285-1668
                                       Email: szg@grossmanroth.com
                                       Email: rwf@grossmanroth.com

                                       Steve W. Berman (*pro hac vice* admission pending)
                                       Shelby Smith (*pro hac vice* admission pending)
                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                       1918 Eighth Avenue, Suite 3300
                                       Seattle, WA 98101
                                       Telephone: (206) 623-7292
                                       Facsimile: (206) 623-0594
                                       Email: steve@hbsslaw.com
                                       Email: shelbys@hbsslaw.com

                                       Jason D. Weisser
                                       SCHULER, HALVORSEN, WEISSER, ZOLLER,
                                       OVERBECK
                                       1615 Forum Place, Suite 4
                                       West Palm Beach, FL 33401
                                       Telephone: (561) 689-9180

                                       *Attorneys for Plaintiffs and the Proposed Class*

010687-11 956296